NO. 07-09-0135-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL  27, 2010

_____

Estate of JERRY DON CATLIN, Deceased
_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A35890-0802; HON. ROBERT W. KINKAID, JR., PRESIDING

_____

*Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

This appeal concerns the interpretation of a lost will executed by Jerry Don Catlin (Catlin Sr.) and which created a testamentary trust.   A copy of the document was probated in its stead.   The testator's son, Jerry Don Catlin, II, (Junior) challenged the effort of Douglas Glenn Barnes (his stepbrother) to probate the document.   Junior lost the challenge and now appeals.   His two issues involve the sufficiency of the evidence underlying the trial court's conclusion that the original will was lost and the accuracy of the trial court's interpretation of the document.   For reasons which will be discussed below, we affirm the judgment.

*Issue One – Lost Will and Probate of a Copy*

Junior initially asserts that there was insufficient evidence to establish "a cause of the non-production of the Will." This was allegedly so because the "proponent of the will . . . [Barnes] had the burden of proof and the presumption that the will was revoked to overcome." And, saying "'we looked and we can not find it'" was not enough, in his view. Thus, Barnes supposedly failed to satisfy the statutory requirements authorizing the probate of a copy. We overrule the issue.

According to §85 of the Texas Probate Code,

> A written will which cannot be produced in court shall be proved in the same manner as provided in the preceding Section for an attested written will or an holographic will, as the case may be, and the same amount and character of testimony shall be required to prove such will as is required to prove a written will produced in court; but, *in addition thereto, the cause of its non-production must be proved, and such cause must be sufficient to satisfy the court that it cannot by any reasonable diligence be produced*, and the contents of such will must be substantially proved by the testimony of a credible witness who has read the will, has heard the will read, or can identify a copy of the will.

TEX. PROB. CODE ANN. §85 (Vernon Supp. 2009) (emphasis added). This provision establishes a method by which a copy of a will may be probated when the original cannot be found. The elements of the statute in play here are those requiring the will's proponent to prove the "cause of its non-production" and that it could not be "produced" through the use of "any reasonable diligence."

The appellate record before us discloses that the will purporting to be the final testament of Catlin Sr. was represented via a copy marked and admitted as Exhibit 1. Furthermore, the attorney who drafted it attested that Exhibit 1 was an "unsigned duplicate" of the actual document that Catlin Sr. executed. Two witnesses present at its

execution also identified the exhibit as a copy of Catlin Sr.'s last will. One further stated that had Exhibit 1 merely been a draft of the final will, as opposed to an actual copy, it would have been marked "draft." However, because it was marked "copy" it was a duplicate of the actual, executed will.

Diane King, Catlin Sr.'s stepdaughter, also testified that she had spoken to her stepfather about his will. He informed her that he wanted to make some changes to it and was acquiring information to do so. However, those changes were not made before his death. She further stated that she searched for his will after he died. Her search encompassed both his home and his place of business, Oswald Printing. Though the original was never found, a copy represented by Exhibit 1 was. The latter was discovered in Catlin Sr.'s briefcase along with documents relating to the estates of his mother and his pre-deceased wife, Doris. She further attested that her search uncovered no other item purporting to be Catlin Sr.'s last will.

Barnes also testified about the effort undertaken to uncover the document. Those looking for it "went through his office at the house" and "at Oswald Printing," he said. So too did they go "to every bank in town, basically, or well the banks that [Glen] knew that [Catlin Sr.] had any kind of a business relationship with." At those banks, they "checked for safety deposit boxes." A search of the files of the attorney who acquired the practice of the lawyer who drafted the will was also undertaken, but it met with little success.

In *In re Estate of Capps*, 154 S.W.3d 242 (Tex. App.–Texarkana 2005, no pet.), the evidence illustrated that the testator executed her will, kept the original, and provided a copy of it to someone for safekeeping with church records. The copy was

3

placed in a locked file cabinet. After Capps died, a search was undertaken for the original. Its scope encompassed her house and a metal box in which she normally retained important documents. Yet, as here, the original was never found. When asked if such evidence satisfied the requirements of §85 of the Probate Code, the panel in *Capps* said yes. *Id.* at 244-45. No less of a search was conducted here. Not only did it include Catlin Sr.'s house but also his business and the banks with which he maintained a business relationship. Given this and *Capps*, we hold that the record before us contains both legally and factually sufficient evidence supporting the trial court's findings that 1) Catlin Sr. did not revoke the February 1993 will submitted for probate, 2) Exhibit 1 was a true and correct copy of the original February 1993 will, and 3) "[t]he Applicants have provided good and sufficient evidence as to the cause of the original Will's non-production and this cause is sufficient to satisfy the Court that the original Will cannot, by any reasonable diligence, be produced." It was not necessary for Barnes to also show how it was lost such as through the eating habits of a neighbor's goat, the occurrence of a Kansas tornado, the devastation of a flash flood, or the like.

*Issue Two –Termination of the Trust*

Junior next argues, via issue two, that the trust which the will purported to create failed or terminated because Doris predeceased her husband. Thus, the property designated to comprise its corpus could not pass to the trust's remaindermen, who happened to be Junior's stepsiblings. We overrule the issue.

It is settled that in construing a will, we focus on the testator's intent. *San Antonio Area Foundation v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000); *In re Dillard*, 98

4

S.W.3d 386, 391-92 (Tex. App. –Amarillo 2003, pet. denied).  Furthermore, that intent is drawn from the will, not the will from the intent.  *San Antonio Area Foundation v. Lang*, 35 S.W.3d at 640; *In re Dillard*, 98 S.W.3d at 391.  In other words, the testator's intent must be garnered from the actual language within the four corners of the document.  *San Antonio Area Foundation v. Lang*, 35 S.W.3d at 639; *In re Dillard*, 98 S.W.3d at 391.  Nevertheless, if those words are open to more than one reasonable construction, evidence of the testator's situation, the circumstances surrounding or influencing the will's execution, and like indicia which enable the court to place itself in his shoes *at the time the document was executed* may be admissible.  *San Antonio Area Foundation v. Lang,* 35 S.W.3d at 639.  This is so because they may facilitate the determination of intent at that time.  But, again, this exception applies only when words are susceptible to more than one construction.  *San Antonio Area Foundation v. Lang*, 35 S.W.3d at 641; *In re Dillard*, 98 S.W.3d at 391-92.  If they are not, then the court can look to nothing other than the face of the instrument.  *In re Dillard*, 98 S.W.3d at 391-92.

So too must we remember that our task is to harmonize potentially conflicting terms in a way that effectuates all aspects of the document.  *Hutton v. Methodist Home*, 615 S.W.2d 289, 292 (Tex. Civ. App.–Fort Worth 1981, writ ref'd n.r.e.).  No provision should be rendered meaningless, if at all possible.  *Myrick v. Moody,* 802 S.W.2d 735, 738 (Tex. App.–Houston [14th Dist.] 1990, writ denied).   Nor should we arrive at a construction that results in partial intestacy, if possible, for such an outcome is disfavored.  *Shriner's Hosp. Etc. v. Stahl*, 610 S.W.2d 147, 151-52 (Tex. 1980); *Atkinson v. Kettler*, 372 S.W.2d 704, 710 (Tex. Civ. App.–Dallas), *aff'd*, 383 S.W.2d 557 (Tex. 1964).  With these precepts in mind, we turn to the writing before us.

5

Via subpart 2.1 of the document, we see that the testator initially "bequeath[ed] to [his] spouse [Doris] all of [his] interest" in the household and yard and garden furniture, personalty used for recreational purposes, automobiles, clothes, jewelry, and "personal effects" used or worn by him. However, if Doris were to die before him, the aforementioned property was to "become a part of that property devised and bequeathed by subpart 2.3 of this section [*i.e.* Section II] of [his] Will." In subpart 2.2, Catlin Sr. left to his "descendants living at the time of [his] death" a "sum equal to one-tenth of the rest, residue, and remainder of [his] property estate." If no such descendants were alive, however, the one-tenth was to "become a part of the rest, residue and remainder of [his] property. . . devised and bequeath[ed] by subpart 2.3" as well. Incidentally, Junior was the only person who fell within the will's definition of "descendant."

Through subpart 2.3, Catlin Sr. devised "all the rest, residue, and remainder of [his] property and estate, real and personal . . . to the Trustee or Trustees hereinafter named in Section III . . . to be held, administered and distributed as provided in such section." As for Section III of the will, the testator used it to create the "Jerry Don Catlin Trust." Therein, he appointed Barnes trustee and directed that the "income from the trust . . . be used . . . to pay the expenses  . . ." incident to administering and operating the trust and to the preservation of the trust corpus. "All of the remaining income of the trust" was then to "be distributed, in equal shares, to [his] spouse [Doris] and Jimmy Wayne Barnes, Diane Marie King, and Douglas Glen Barnes at such intervals as shall be deemed reasonable by my Trustee  . . . ." The trustee was also granted the authority to invade the trust corpus if the income proved insufficient to "provide for the health,

6

education, support and maintenance . . ." of the beneficiaries. Catlin Sr. then directed the trust to "terminate upon the death of [his] spouse" and that upon its termination, all the trust corpus "shall belong and be delivered to Jimmy Wayne Barnes, Diane Marie King, and Douglas Glen Barnes, in equal shares" or to the respective children of any of those three who had died. From these various provisions we reach the following conclusions.

First, the will contained no residual clause other than that vesting the trust with the remaining 9/10ths of the testator's property interests. We mention this because Junior's interpretation of the will and circumstances of the case would result in a partial intestacy. That is, if the provisions relating to the creation of a trust are somehow nullified because Doris predeceased her husband, then no residual clause exists to direct how the remaining 9/10ths of the estate should be distributed. Consequently, the rules of intestate succession would come into play, which is a result disfavored by our jurisprudence. *Shriner's Hosp. v. Stahl*, *supra*. And, application of those rules would effectively pass the estate to Junior as Catlin Sr.'s only child. TEX. PROB. CODE ANN. §38(a)(1) (Vernon 2003).

Next, and irrespective of the legal mechanism by which his estate was to pass, Catlin Sr. specified, and therefore intended, that Junior receive no more than 1/10th of his estate after specific bequests to Doris were disbursed. Again, the testator's descendants (*i.e.* Junior) "living at the time of [his] death" a "sum equal to one-tenth of the rest, residue, and remainder of [his] property estate." Nothing was left them or Junior elsewhere in the document. More importantly, any interpretation of the will that

7

resulted in a partial intestacy would effectively contradict the testator's intent for they (*i.e.* Junior) would receive more than the 1/10th limitation specified by the instrument.

We next conclude that Doris' interest in both her husband's estate and the trust was contingent upon her surviving him. Again, the specific bequests given her were to go to the trust per subpart 2.3 of the will if she predeceased him. Furthermore, her enjoyment of the trust income and corpus ended when she died since at that point the trust terminated and the remaining property was to be distributed to her children, James, Jimmy, and Diane.

So too do we see that creation of the trust was not dependent upon Doris surviving her husband. To conclude otherwise would be to nullify subpart 2.1 of the will. Through that provision, Doris was to receive various personal items of her husband so long as she outlived him. Yet, if she died before him "then all of the foregoing items [were to] become a part of [the] property devised and bequeathed by subpart 2.3," the latter being the clause placing the property in trust. Given that we must interpret the will in a manner that gives effect to each provision, *Hutton v. Methodist Home*, 615 S.W.2d at 292, we can only conclude that by requiring property to be placed in trust even if Doris died before Catlin Sr., the latter intended to create a trust irrespective of whether she survived him.

Additionally, Junior cites us to no authority prohibiting the creation of a trust followed by its immediate termination. He does though turn to §58a(d) of the Texas Probate Code and uses it to support his contention that because Doris died before her husband, the trust never came into creation. That section, which concerns bequests left to a trust, is the Texas version of the Uniform Testamentary Additions to Trusts Act.

TEX. PROB. CODE ANN. § 58a(a) (Vernon 2003); *In re Estate of Canales*, 837 S.W.2d 662, 667 (Tex. App.–San Antonio 1992, no writ). According to subsection (d) of that statute, "[u]nless the testator's will provides otherwise, a revocation or termination of the trust *before* the testator's death causes the devise or bequest to lapse." *Id.* at §58a(d) (emphasis added). For a trust to have terminated *before* the testator's death, it must have been in existence prior thereto; indeed, an event cannot end if it never began in the first place. Yet, the Jerry Don Catlin Trust was created through Catlin Sr.'s will, and no one suggests otherwise. Moreover, the terms of that will did not take effect until he died. *Meyer v. Shelley*, 34 S.W.3d 619, 623 (Tex. App.–Amarillo 2000, no pet.), *citing Shriner's Hosp. v. Stahl*, 610 S.W.2d 147, 150 (Tex. 1981) (holding that a will speaks at the time of the testator's death). At that point the trust arose, and it instantaneously acquired title to the property bequeathed to it by Catlin Sr. *See* TEX. PROB. CODE ANN. §37 (Vernon 2003) (stating that when a person dies testate, title to property immediately vests in the devisees or legatees); *accord, In re Hite*, 700 S.W.2d 713, 717 (Tex. App.–Corpus Christi 1985, writ ref'd n.r.e.) (stating that there is no shorter interval of time than when the testator dies and his estate passes to his devisees). So, the circumstances before us are not those governed by §58a(d).

Young folk of the 1970's sang about how "a long strange trip it's been."[1] That seems to capture the essence of our discourse, that is, a long trip encompassing odd circumstances. Nonetheless, engaging in the journey serves to illustrate how the words of the will truly manifest the intent of Catlin Sr. and why our disposition of this appeal abides by that intent. In rejecting Junior's assertion, we avoid the chance of intestacy, apply the words utilized by the testator within the four corners of the will, follow legal

---

[1]Grateful Dead, "Truckin."

9

principles established as road markers, and, by vesting his stepchildren with the remaining 9/10ths of his estate, arrive at the destination his father selected.

Having overruled each issue, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice