**Opinion filed August 21, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00221-CV

_____

## IN THE MATTER OF THE ESTATE OF
## ELWIN ROSS STANDEFER, DECEASED

**On Appeal from the County Court at Law No. 2**
**Ector County, Texas**
**Trial Court Cause No. 21666-14**

### O P I N I O N

Nedinah Davis, Appellant, filed an Application For Independent Administration and Letters of Administration in which she alleged that her father, Elwin Ross Standefer,[1] died intestate. Another of Elwin's adult children, Randy Standefer, Appellee, subsequently filed an Application to Probate Will and for Issuance of Letters Testamentary to probate a copy of what he claimed was Elwin's original, unrevoked will. After a hearing, the trial court ruled in favor of

---

[1]To aid in clarity, we will refer to the deceased as Elwin and to his children by their first names.

Randy and admitted the copy of Elwin's will to probate. Appellant presents six issues on appeal. We affirm.

## I. *Evidence at the Hearing*

Elwin died in Odessa in January 2014 at the age of seventy-five. He was survived by three adult children: his daughter, Nedinah, and his two sons, Randy and Terry Standefer. Elwin owned all the stock in his company, Ross Hot Shot and Forklift Services (Hot Shot), along with other assets. Elwin executed a will in September 2012, which purported to leave his entire estate to Randy and Terry and leave nothing to Nedinah.

Randy testified that in September 2012 Elwin told him that he had executed a will. Randy, knowing this, searched for the will after his father's funeral. Randy looked in his father's lockbox, a place where Randy said his father would normally keep important papers, but he could not find it. He also went to the office of Kathy Witt, Elwin's bookkeeper and accountant, to see if she had the will. Kathy did not have the original, but she gave Randy her last remaining photocopy of the original, signed will. When asked if he had diligently searched for the will, Randy answered in the affirmative.

Randy also testified that "anyone who actually worked with [his] dad" probably had access to the lockbox. Someone had gained access to the lockbox and had taken the title to an antique car that Elwin owned. Elwin had confronted his girlfriend's daughter, Tammie Werner, about the missing title, as she had access to the lockbox. After being confronted about the title, Tammie returned it to Elwin with her signature scratched out. Randy feared that Tammie, or whoever accessed the lockbox to take the car title, may have taken the original will at the same time.

2

Casey Davis worked for Elwin at Hot Shot for nine years as a truck driver and office manager. Casey said that Elwin would have kept his will in his lockbox.[2] She said she saw an envelope entitled "Last Will and Testament" in the lockbox. Casey testified that she, Elwin, Randy, and Tammie all had access to the lockbox. Casey also knew about the car title that was taken. Based upon someone accessing the lockbox and taking the car title, Casey agreed that someone could have taken the original copy of the will at the same time.

Nedinah was Elwin's daughter and Randy's sister. Nedinah had previously worked for her father at Hot Shot, and Elwin had even bought Nedinah and her husband a house to live in. Approximately four to five years prior to the hearing, however, Nedinah and her father had a disagreement. Because of the disagreement, her father immediately fired her from her job at Hot Shot, and she and her husband moved out of the house. After that, Nedinah said that she and Elwin "didn't have much of" a relationship.

Kathy worked as Elwin's bookkeeper and accountant from 2010 forward. She testified that she prepared the will at issue for Elwin, and despite the word "copy" on the will, she agreed that the will offered by Randy was a true and correct copy of the original document she drafted and witnessed Elwin sign. She claimed that Elwin never asked her to draft another will for him after that. Finally, Kathy agreed that the will left nothing to Nedinah and that Elwin made it clear that was his intention.

## II. *Issues Presented*

Appellant contends, in six issues, that the evidence was legally and factually insufficient to support the trial court's ruling that Randy met his burden of proof

---

[2]Although Casey initially used the term "safe," it appears that her reference was to the lockbox we have previously mentioned. We will therefore refer to the safe as a lockbox in order to avoid confusion.

under Sections 256.152, 256.153, and 256.156 of the Texas Estates Code. TEX. EST. CODE ANN. §§ 256.152, 256.153, 256.156 (West 2014). Appellant outlines two issues for each section, but then addresses these issues collectively throughout the brief. We construe Appellant's briefing to raise two challenges under Section 256.152 and three challenges under Section 256.156. We also note that Appellant has one challenge under Section 256.153. We will address the challenges under Section 256.152 first, followed by the challenges under Section 256.156, and then address the challenge under Section 256.153.

III. *Standard of Review*

The trial court's findings of fact have the same weight as a jury's verdict; we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We apply the same standards we do when reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina*, 881 S.W.2d at 297. We review a trial court's conclusions of law de novo. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If we determine that a conclusion of law is erroneous but that the trial court rendered the proper judgment, the error does not require reversal. *Id.*

When we conduct a legal sufficiency review, we review the evidence in a light that supports the disputed finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). We "consider all of the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor." *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.) (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)). If more than a

4

scintilla of evidence supports the challenged finding, the no-evidence challenge must fail. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999).

For a factual sufficiency review, we examine all the evidence in the record, both for and against the lower court's findings. *Ortiz*, 917 S.W.2d at 772. We must consider and weigh all such evidence in a neutral light. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When the trial court sits as factfinder, it is the sole judge of the witnesses' credibility, and it may believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *Id.* at 761; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). If the evidence would enable reasonable and fair-minded people to differ in their conclusions, then jurors are allowed to do so. *City of Keller*, 168 S.W.3d at 822. We do not substitute our judgment for that of the trier of fact, so long as the evidence falls within this zone of reasonable disagreement. *Id.* When we consider and weigh the evidence, we will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

IV. *Analysis*

Appellant argues, under Section 256.152, that there was legally and factually insufficient evidence to prove that (1) Elwin did not revoke the will and (2) Elwin executed the will with the required formalities and solemnities. Appellant argues, under Section 256.156, that there was legally and factually insufficient evidence to prove (1) the original will could not, by reasonable diligence, be produced; (2) credible testimony proved the contents of the will; and (3) the will was self-proving. Appellant also argues that there were no subscribing witnesses who testified, as required under Section 256.153.

*A. First Challenge: Elwin did not Revoke the Will*

Appellant argues that the evidence failed to prove that Elwin did not revoke the will, as required by Section 256.152(a)(1). *See* EST. § 256.152(a)(1). When the original will cannot be located and the will was last seen in the testator's possession, a presumption arises that the testator destroyed the will with the intent of revoking it. *Hibbler v. Knight*, 735 S.W.2d 924, 927 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e). The proponent must overcome this presumption by a preponderance of the evidence. *In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex. 1988). One can meet this burden with evidence of circumstances contrary to the presumption or with evidence that some other person fraudulently destroyed the will. *In re Estate of Turner*, 265 S.W.3d 709, 713 (Tex. App.—Eastland 2008, no pet.) (citing *In re Estate of Capps*, 154 S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no pet.)). Evidence that the decedent recognized his will's continued validity and had continued affection for the primary beneficiary of his will, without evidence that he was dissatisfied with the will or had any desire to change or cancel it, is sufficient proof of circumstances contrary to the presumption. *Id.*

Kathy testified that Elwin took the will with him after he executed it at her office, but the original will could not be found after Elwin's death. Casey testified that she saw an envelope entitled "Last Will and Testament" in Elwin's lockbox. At least four people had access to the lockbox where Elwin had likely kept his will with other important documents. Someone had accessed the lockbox in the past without permission and had taken the title to an antique car. Randy and Casey testified that Tammie had access to the lockbox. When confronted about the missing car title, Tammie returned it to Elwin with her signature scratched out. Randy and Casey acknowledged that whoever took the car title, whether it was Tammie or someone else, may have taken the original will, or someone may have

taken it at a later time. This evidence is more than a scintilla of evidence to overcome the presumption that Elwin revoked the will. *See In re Estate of Perez*, 324 S.W.3d 257, 261–62 (Tex. App.—El Paso 2010, no pet.); *In re Estate of Caples*, 683 S.W.2d 741, 742–43 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.).

Kathy drafted the will for Elwin and said that Elwin clarified that he did not want Appellant to get anything from his estate. Elwin maintained a close and affectionate relationship with Randy, who was one of the two primary beneficiaries of the will. Randy worked with his father at Hot Shot and saw him "all the time." Appellant admitted that she "didn't have much of" a relationship with her father and that she had not talked to him for at least one year prior to his death. Kathy testified that Elwin never asked her to modify the will or to draft a new one. Elwin also told Randy and Terry that he had executed a will, but there was no testimony or evidence that Elwin told them he had modified it, revoked it, or executed another one.

The will offered by Randy made no provision for Tammie's mother, Wilma, who was also Elwin's girlfriend. The will also indicated that Elwin was not married. All three of Elwin's adult children testified either that Elwin was not married or that they had no knowledge that he was married when he died. Wilma nevertheless filed a Notice of Appearance of Surviving Spouse in the trial court "through her attorney-in-fact Tammie Werner," in an attempt to establish inheritance rights. At the hearing, Randy did not explicitly accuse Tammie of accessing the lockbox and stealing the will. Rather, he acknowledged that it "was a possibility" she had done so. Appellant argues that the evidence that someone had accessed Elwin's lockbox and taken the car title made it illogical for Elwin to keep storing important documents in the same location. There was no direct

7

evidence that Tammie took the will, but Tammie's mother would stand to benefit from Elwin's estate if she proved that she was married to Elwin, and Tammie may have thought that destroying the will would further that goal.

Randy and Terry admitted that they did not see their father sign the will; Terry acknowledged that he never saw the will. Casey admitted that, even though she saw an envelope labeled "Last Will and Testament," she never saw what was inside the envelope. And although there was evidence of Elwin's continued affection for Randy, there was no evidence regarding Terry's relationship with Elwin, and Terry was the other of the two primary beneficiaries under the will.

We have reviewed all the evidence and conclude that the trial court could have found that the presumption of revocation was rebutted by the evidence indicating that the will was fraudulently destroyed or by the evidence showing circumstances contrary to the presumption. *See Turner*, 265 S.W.3d at 715; *see also Perez*, 324 S.W.3d at 261–62; *Caples*, 683 S.W.2d at 742–43. We hold there was legally and factually sufficient evidence from which the trial court could have found that Elwin did not revoke his will. We overrule Appellant's challenge under Section 256.152(a)(1).

### B. Second Challenge: Elwin Executed the Will with the Required Formalities and Solemnities

Appellant argues that Randy failed to prove that Elwin executed the will with the requisite formalities and solemnities. *See* EST. § 256.152(a)(2)(A). Section 256.152(a)(2)(A) requires a will proponent, with a will that is not self-proved, to prove that the testator "executed the will with the formalities and solemnities and under the circumstances required by law to make the will valid." *Id.* Once a proponent admits a self-proved will into evidence, however, he has prima facie established that the will was properly executed. *Bracewell v. Bracewell*, 20 S.W.3d 14, 26 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

The will offered by Randy was self-proved, so Randy prima facie established that the will was properly executed. Appellant attempts to rebut the prima facie evidence and argues that there are "discrepancies" with the will and, therefore, that the self-proving affidavit was ineffective and the will was not properly executed. Appellant asserts that (1) Elwin's type-written name on the will was "Elwin Ross Standefer," but the signature above the typed name reads "Ross Standefer," and (2) Elwin did not sign the will, but, rather, his signature came from a stamp of his signature. For these reasons, Appellant argues, she rebutted the prima facie evidence and proved that the will was not properly executed.

### 1. The Signature was Sufficient

A will must be signed by the testator in person or by another person for the testator in the testator's presence and under the testator's direction. *See* EST. § 251.051. Texas courts have been lenient regarding the location and form of a "signature." *Luker v. Youngmeyer*, 36 S.W.3d 628, 630 (Tex. App.—Tyler 2000, no pet.) (citing *Mortgage Bond Corp. of N.Y. v. Haney*, 105 S.W.2d 488, 491 (Tex. Civ. App.—Beaumont 1937, writ ref'd) (approving an "X" as a sufficient signature on an attested will)). Importantly, it is "necessary that the maker intend that his name or mark constitute a signature, i.e., that it expresses approval of the instrument as his will." *Id.* A signature by initials executes a will if the instrument is testamentary in character. *Trim v. Daniels*, 862 S.W.2d 8, 10 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

Kathy testified that, before Elwin executed the will, she explained its terms to him point by point. She said that Elwin wanted to sign the will, that she witnessed Elwin sign the will, and that he did so with the intent to make it his will. This is some evidence that Elwin signed his will. *See In re Estate of Romancik*, 281 S.W.3d 592, 597 (Tex. App.—El Paso 2008, no pet.).

9

Appellant counters that the signature reads "Ross Standefer" instead of "Elwin Ross Standefer" and, therefore, is insufficient. However, there is no requirement that Elwin's signature match exactly the type-written version of his name, as Appellant would have us hold, and the omission of "Elwin" does not render the signature insufficient. *See Luker*, 36 S.W.3d at 630; *see also Romancik*, 281 S.W.3d at 597.

## 2. *Elwin Signed the Will*

Appellant argues that the will did not have Elwin's handwritten signature on it but, rather, a stamp of Elwin's signature. She further argues that, because there is no evidence that Elwin directed someone in his presence to stamp his signature on the will, the will was not validly signed. Kathy testified that she witnessed Elwin sign the will and that the copy portrayed his written signature, not a stamp of his signature. Casey testified that Elwin had a stamp of his signature made but that Elwin destroyed it in 2010 or 2011, which was before Elwin executed the will. This is some evidence that Elwin signed, rather than stamped, his signature on the will. *See Brown v. Traylor*, 210 S.W.3d 648, 668–69 (Tex. App.—Houston 2006, no pet.).

Appellant argues that Elwin had a stamp of his signature made, that "the ink reflected on [Elwin's] alleged signatures on the [c]opy is undisputedly much darker than the ink reflected on the other individuals' signatures," and that the letters are much "thicker" too. Appellant's daughter, Lauren Davis, was familiar with Elwin's signature, and she testified that the signature portrayed on the will was not his. Appellant argues this evidence showed that the signature came from a stamp. But, as Terry pointed out, he does not know if Elwin and the witnesses signed with the same pen. The evidence was in dispute about Elwin's signature on the will and whether it was accomplished by his hand or by a stamp of his signature.

10

The trial court could believe or disbelieve any witness, and the trial court found that the will was properly executed and that the self-proving affidavit was valid. We hold the evidence was legally and factually sufficient to prove that Elwin signed the will and that he executed the will with the proper formalities and solemnities. We overrule Appellant's challenge under Section 256.152(a)(2)(A).

## C. Third Challenge: The Will Could not by any Reasonable Diligence be Produced

Appellant argues that there was insufficient evidence to meet the requirement of Section 256.156(b)(1) that "the cause of the nonproduction of a will not produced in court must be proved, which must be sufficient to satisfy the court that the will cannot by any reasonable diligence be produced." EST. § 256.156(b)(1). Section 256.156 applies when the original will cannot be produced in court. *See In re Estate of Catlin*, 311 S.W.3d 697, 700 (Tex. App.—Amarillo 2010, pet. denied) (noting that Section 256.156[3] "establishes a method by which a copy of a will may be probated when the original cannot be found"); *Garton v. Rockett*, 190 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (noting that "[a] party seeking to probate a copy of a will, rather than the original, must proceed under section [256.156 of the Estates Code]").[4]

In *In re Estate of Capps*, there was testimony that, despite a thorough search of the decedent's house, the original will could not be located. 154 S.W.3d at 244. The decedent "kept in the house a metal box that typically contained her important records and, though that box was found and searched, the will was not found there,

---

[3]The court referred to Section 85 of the former Texas Probate Code, which is now Section 256.156 of the Estates Code. The former Probate Code was recodified into the Estates Code, without substantive alteration, effective January 1, 2014. *See* EST. § 256.156.

[4]*But see In re Estate of Jones*, 197 S.W.3d 894, 902 (Tex. App.—Beaumont 2006, pet. denied) (when an accurate photocopy of an otherwise valid, unrevoked "lost" will is introduced into evidence, Section 256.156 does not apply).

either." *Id.* Two separate photocopies of the will were produced in court. *Id.* The court held that "the material evidence was sufficient to overcome the absence of the original will, since the material evidence sufficiently (A) showed the cause of nonproduction and (B) showed the will was not revoked (and rebutted the presumption that it was)." *Id.*

Randy agreed that he had diligently searched for the will. He testified that he looked in his father's lockbox, where his father normally kept important papers, but that the will was not there. He went to Kathy's office to see if she had the will, but she only had a photocopy of it. Kathy gave him the copy, and he subsequently introduced it into evidence at the hearing. We previously concluded there was sufficient evidence from which the factfinder could have found that the original will was fraudulently destroyed and not revoked, which explained its nonproduction. *See Turner*, 265 S.W.3d at 715; *see also Perez*, 324 S.W.3d at 261–62; *Caples*, 683 S.W.2d at 742–43. We hold the evidence was legally and factually sufficient to show that Randy could not by any reasonable diligence produce the will. We overrule Appellant's challenge under Section 256.156(b)(1).

### D. Fourth Challenge: Credible Testimony Proved the Contents of the Will

Appellant argues that the evidence failed to meet the requirement of Section 256.156(b)(2) that "the contents of the will must be substantially proved by the testimony of a credible witness who has read either the original or a copy of the will, has heard the will read, or can identify a copy of the will." Est. § 256.156(b)(2). While it is unnecessary to establish all of the provisions of an alleged lost will literally or verbatim, it is, however, necessary to establish its material contents to some degree of certainty. *Garton*, 190 S.W.3d at 145 (citing *Cason v. Taylor*, 51 S.W.3d 397, 409 (Tex. App.—Waco 2001, no pet.)).

Kathy testified that she met with Elwin in person to discuss his wishes related to his will. Kathy then drafted a will for Elwin based upon their conversation. Elwin returned to Kathy's office, and she went through the will she drafted point by point before he signed it. She testified she knew of the will's contents because she had drafted it. She also testified that the copy introduced into evidence was an exact copy of the original.

Appellant argues that Kathy was not credible and asserts, correctly, that Kathy is not an attorney and engaged in the unauthorized practice of law when she drafted the will. Appellant further argues that Kathy's role as drafter of the will and notary of Elwin's and the witnesses' signatures is more evidence of her lack of credibility, but Appellant cites no authority to support this proposition. The trial court believed Kathy, and her testimony was sufficient for Randy to meet his burden of proof under Section 256.156(b)(2). We overrule Appellant's challenge under Section 256.156(b)(2).

### E. Fifth Challenge: The Will was Self-Proved

Appellant argues that there was insufficient evidence under Section 256.156(a), which requires that "[a] will that cannot be produced in court must be proved in the same manner as provided in Section 256.153." EST. § 256.156(a). Section 256.153, however, applies to a will "that is not self-proved." EST. § 256.153(a). And a "will that is self-proved . . . is not required to have any additional proof . . . to make the will valid." EST. § 256.152(b). We must decide whether Randy had to meet the requirements of Section 256.153, although he presented a self-proved will.

The court in *Bracewell* was presented with the same issue we face now. There, the court concluded that a valid self-proving affidavit attached to a photocopy of a will made it unnecessary for the will's proponent to meet the

requirements of Section 256.153.[5]  *Bracewell*, 20 S.W.3d at 26.  We agree.  The trial court found that the will was self-proved, and we held that Appellant's arguments in regard to the validity of Elwin's signatures did not invalidate the self-proving affidavit.  Therefore, because the will was self-proved, Randy met his burden of proof under Section 256.156(a).  We overrule Appellant's challenge under Section 256.156(a).

### F. Sixth Challenge: Section 256.153 is Inapplicable Because the Will was Self-Proved

Appellant asserts that there is legally and factually insufficient evidence to meet the requirement of Section 256.153 that requires one or more subscribing witnesses to testify concerning a will that is not self-proved.  *See* EST. § 256.153(b).  As we have held that the will was self-proving, this section is inapplicable.  *See Bracewell*, 20 S.W.3d at 26.  We overrule Appellant's challenge under Section 256.153.

## V. *Conclusion*

After reviewing the record, we hold that the evidence was legally and factually sufficient to support the findings made by the trial court under Sections 256.152, 256.153, and 256.156 of the Texas Estates Code.  Therefore, the trial court did not err when it admitted the copy of Elwin's will for probate.

## VI. *This Court's Ruling*

We affirm the order of the trial court.


August 21, 2015                                                    MIKE WILLSON

Panel consists of: Wright, C.J.,                              JUSTICE
Willson, J., and Bailey, J.

---

[5]*See* Footnote No. 3.  In *Bracewell*, the court referred to Section 84 of the Probate Code, which is now Sections 256.152 and 256.153 of the Estates Code.  20 S.W.3d at 26; *see also* EST. §§ 256.152, 256.153.

14