# Supreme Court of Texas

No. 23-0258

In the Estate of Myrtle Dell Brown, Deceased

On Petition for Review from the
Court of Appeals for the First District of Texas

**PER CURIAM**

Justice Lehrmann did not participate in the decision.

This case involves the Humane Society of the United States' uncontested application to probate a copy of decedent Myrtle Dell Brown's will executed in October 2009, which named the Society her sole beneficiary. Although the application was uncontested and the trial court found that a reasonably diligent search for the original will occurred, the court nonetheless reached the contrary conclusion that the Society failed to establish the cause of nonproduction and denied the application. The court of appeals affirmed, holding that on-the-record testimony from Catherine Wylie—an attorney and the guardian of Brown's person and estate before her death—could not be considered evidence because the record of the hearing did not show Wylie was sworn as a witness. The court of appeals therefore did not consider whether

the Society had shown any of the Estates Code's other requirements for proving up a copy of a will, including whether the Society sufficiently overcame the presumption of revocation that attaches when the original will is missing and was last seen in the decedent's possession.

We hold that neither the Estates Code nor the Rules of Evidence required Wylie's testimony to be sworn under these circumstances. The court of appeals therefore erred in refusing to consider Wylie's testimony, which we hold was sufficient as a matter of law to satisfy the Estates Code's requirement that the applicant establish the cause of nonproduction. We therefore reverse the court of appeals' judgment. Because the court of appeals did not address whether the Society overcame the presumption of revocation, we remand for that court to consider the question in the first instance—including, if necessary, the applicable burden of proof for showing nonrevocation when the proceeding is uncontested.

## BACKGROUND

The following facts are drawn from the Society's pleadings and evidence presented at the trial court hearings, which we view in the light most favorable to the Society.[1] Where applicable, we note whether a particular fact is contested or stems from documents or evidence not included in our record on appeal.

In August 2009, Myrtle Dell Brown signed a will naming her cousin, Annabelle Powell, executor and sole distributee of her estate. Brown and Powell subsequently had a falling out because Powell fired

---

[1] *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

2

one of Brown's caretakers and allegedly stole from Brown.   One of Brown's caretakers told Beverly June Eriks about the situation, and Eriks decided to help Brown after notifying the State Bar.

On October 1, 2009, Brown allegedly made the new attested will at issue here, which was drafted by attorney John Yow.  The October 2009 will revoked all prior wills, named the Society sole distributee of her estate, and named Eriks independent executor.   The original October 2009 will was in Brown's possession after signing.

Shortly after the October 2009 will's signing, David Easterling, a former attorney of Brown, wrote a letter to the trial court suggesting the need for guardianship.[2]   The trial court opened a guardianship proceeding and appointed attorney Catherine Wylie as Brown's guardian on October 19, 2009.[3]   Wylie concluded that Brown's caretakers were stealing from her.  According to the trial court, Brown also told guardian Wylie that Eriks was stealing from her, but there are no details underlying this allegation in our record.  Within a few months, Brown moved to an assisted living center, where she passed away in June 2018.

In August 2018, Eriks filed an unopposed application to probate a copy of Brown's October 2009 will, in which she states that the original

---

[2] A copy of this letter is not included in the appellate record but is referenced in the hearings below and by the trial court in its findings of fact and conclusions of law.

[3] The court initially appointed Wylie as a guardian ad litem.  After a December 2009 medical examination determined Brown was totally incapacitated, Wylie was appointed as the guardian of her person and estate in February 2010, which left Brown unable to revoke a will unilaterally.

will could not be located and that she believed it had been accidentally disposed of during the guardianship.[4] At the trial court's direction, Wylie then filed an Application for Determination and Declaration of Heirship in December 2018. That same month, Eriks moved the court to reconsider and objected to an heirship determination, and the Society filed its own application for probate, which was unopposed. The Society also filed a jury demand, requesting a trial by jury of any contested matter.

The trial court held a hearing on the applications by Eriks and the Society in September 2019, and Wylie gave possibly unsworn testimony[5] that Brown's caretakers were stealing from Brown, that Brown's papers and belongings were disordered and had clearly been gone through before Wylie searched for the original will, and that Brown was very easily exploited. Wylie also observed that several people had access to and frequently entered and left Brown's quarters at the assisted living center. Although Brown had a "history of hiding" valuables such as cash, Wylie explained that her search for Brown's original October 2009 will was so thorough that she "cleared the whole house" and "if there was an original it was not in her home or in the safe deposit box." The trial court stated that it "want[s] the Humane Society

---

[4] Brown's two potential heirs signed waivers under Texas Estates Code Section 258.051(c), relinquishing their right to notice of any further proceedings regarding the admission to probate of any will of Brown's. The Attorney General also filed a waiver declining to be a party to the proceeding.

[5] The Society acknowledges that "the transcript fails to reflect that [Wylie] was present as a witness, not counsel," but nonetheless maintains Wylie "was in fact sworn in at the beginning of the proceeding."

4

to get their money too," but it ultimately refused to probate a copy of the October 2009 will, rejecting the proponents' insistence that "[t]hey probate copies [of wills] every day in every court." Despite the case's uncontested nature, the trial court denied the application for probate.

In November 2019, the Society filed a motion to reconsider and for new trial, and the trial court held a hearing on the motion that same month. Wylie again provided unsworn testimony that she searched Brown's safe deposit box and "cleared the whole house" in the course of searching for the will. No one objected to Wylie's not being sworn in on the record. John Yow also testified that he had drafted the October 2009 will and unsuccessfully searched his office for the will even though it was not his practice to keep originals.

The trial court denied the motion to reconsider and later issued findings of fact and conclusions of law at the Society's request. Despite finding that "a diligent search of [Brown's] home and safe deposit box" took place "during the guardianship," the trial court concluded "[t]here was not sufficient evidence as to the cause of nonproduction of the October 1, 2009 Will" under Texas Estates Code Section 256.156. The trial court also observed that "[a]n original Will's absence creates a rebuttable presumption of revocation" that can be "overcome by proof and circumstances contrary to the presumption." Finding that no such proof was presented, the trial court concluded "[t]here was not sufficient proof to show non-revocation of the October 1, 2009 Will," and stated it was "quite possible that [Brown] voluntarily destroyed her own original will," as "[n]o evidence was given or produced to contradict" that possibility. In reaching this conclusion, the trial court noted that "the

5

Will executed immediately prior to this Will was revoked within two months of creation."

Finally, relying exclusively on the letter from Brown's former attorney Easterling that is not in the record, the trial court stated "[t]he suspicious nature of the actions drew the possibility and conclusion that said Will was not done in good faith." The trial court did not include any findings or conclusions regarding other applicable requirements under the Estates Code, such as whether Brown had sufficient testamentary capacity at the time the October 2009 will was executed.[6]

The Society appealed the trial court's order denying its application for probate[7] and the court of appeals affirmed, holding the Society failed to show as a matter of law that the original October 2009 will could not be located after a reasonably diligent search. ___ S.W.3d ___, 2022 WL 17813757, at *9 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022). The court applied an abuse-of-discretion standard of review, under which the "legal and factual sufficiency of the evidence

---

[6] The trial court also concluded that because the October 2009 will was not admitted to probate, the Society had no standing. But the Society unquestionably has a pecuniary interest that is affected by whether the will is probated, so it continues to have standing to challenge the trial court's denial of its probate application. *See In re Est. of Johnson*, 631 S.W.3d 56, 60 (Tex. 2021).

[7] Generally, appeals may be taken only from final judgments, but "probate proceedings are an exception to the 'one final judgment' rule." *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). A probate order is appealable if it "dispose[s] of all parties or issues in a particular phase of the proceeding." *Id.* at 579. Applying this exception, courts have held that an order denying an application to probate a will is appealable. *E.g.*, *Cherry v. Reed*, 512 S.W.2d 705, 707 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.).

6

are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion." *Id.* at *6. The court noted that under a factual sufficiency review, the party must show "that the adverse finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Id.*

Using this standard, the court of appeals affirmed the trial court's conclusion that there was insufficient evidence regarding the cause of nonproduction, refusing to consider Wylie's statements at the hearings because Wylie "was not called as a witness at the hearing, not sworn in as a witness, and not subject to cross-examination." *Id.* at *8 (citing *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997)). For these reasons, the court of appeals held the trial court did not abuse its discretion in denying the Society's application to probate a copy of the October 2009 will. The court thus did not reach the questions whether the Society overcame the presumption of revocation or whether the will was made in good faith.

The court of appeals also held the Society failed to preserve its complaint about not receiving a jury trial because it participated in the probate hearings without objecting or "otherwise affirmatively indicat[ing] that it intends to stand on its perfected jury trial right." *Id.* at *9. The court further characterized the Society's position as inconsistent because the Society emphasized the proceeding's uncontested nature yet argued the trial court erred in denying it a jury trial even though the statute permitting a jury trial in probate court is

7

reserved for contested cases. *Id.* at *9 n.10 (citing TEX. EST. CODE § 55.002).[8]

The Society filed a petition for review, which raises four issues: (1) whether the applicant in an uncontested probate proceeding must prove the cause of nonproduction by a preponderance of the evidence; (2) whether the court of appeals erroneously ignored Wylie's unsworn testimony regarding nonproduction; (3) whether the trial court erred in concluding the Society presented no evidence rebutting the presumption of revocation; and (4) whether the court of appeals erred in concluding the Society waived any right to a jury trial. We begin our analysis with the second issue, which was the principal focus of the court of appeals' opinion.

## ANALYSIS

All applications to probate a will must meet certain requirements, which include establishing that an original will was not subsequently revoked. TEX. EST. CODE § 256.152(a)(1). Two additional requirements apply when an original will is not produced in court.[9] First, the applicant must prove the cause of nonproduction. *Id.* § 256.156(b)(1).

_____

[8] We note this proceeding occurred in a county court at law, not a probate court. Thus, this statute—which provides for a jury trial in a "contested probate . . . proceeding in a probate court"—does not apply. TEX. EST. CODE § 55.002; *cf. Davis v. Davis,* 34 Tex. 15, 23-24 (1870) (addressing constitutional right to jury trial of contested fact issues in probate proceedings).

[9] Applicants to probate an attested will not produced in court must also show the requirements listed in Section 256.153. *See* TEX. EST. CODE § 256.156(a). These requirements were not addressed by the trial court or court of appeals but may be considered on remand.

8

Second, if the will was last seen in the testator's possession or in a place to which she had ready access, the applicant must overcome a rebuttable presumption that the testator revoked the will. *See In re Est. of Glover*, 744 S.W.2d 939, 940 (Tex. 1988); *Woods v. Kenner*, 501 S.W.3d 185, 197 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

To prove the cause of nonproduction of the will, an applicant must present evidence "sufficient to satisfy the court that the will cannot by any reasonable diligence be produced." TEX. EST. CODE § 256.156(b)(1). Although applicants are not required to prove exactly *how* the original will was lost, they must demonstrate the will could not be found after a reasonably diligent search. *E.g.*, *Est. of Catlin*, 311 S.W.3d 697, 700-01 (Tex. App.—Amarillo 2010, pet. denied) ("It was not necessary for [the proponent] to also show how it was lost such as through the eating habits of a neighbor's goat, the occurrence of a Kansas tornado, the devastation of a flash flood, or the like."). There is no single correct method to conduct a reasonably diligent search for a will; courts have held that searches broad enough to include safe-deposit boxes and other places where the will would likely be found are sufficient.[10]

Because "[t]he mere making of a will . . . creates a presumption that the testator intended to dispose of h[er] entire estate, and that [s]he

---

[10] *See In re Est. of Standefer*, 530 S.W.3d 160, 168 (Tex. App.—Eastland 2015, no pet.) (searching lockbox and office of decedent's bookkeeper constituted reasonably diligent search); *Catlin*, 311 S.W.3d at 700-01 (searching testator's home, safe-deposit boxes, place of business, and attorney's office constituted a reasonably diligent search); *In re Est. of Capps*, 154 S.W.3d 242, 244-45 (Tex. App.—Texarkana 2005, no pet.) (searching locked filing cabinet, testator's house, and metal box where she stored important papers constituted reasonable diligence).

did not intend to die intestate,"[11] courts apply a presumption of continuity or nonrevocation when an original will is produced in court without mutilation or when the will can be traced to the hands of someone other than the testator. *Harkins v. Crews*, 907 S.W.2d 51, 59 (Tex. App.—San Antonio 1995, writ denied). Conversely, "when an original will cannot be located and was last seen in the testator's possession, a presumption arises that the testator destroyed the will with the intent of revoking it." *Woods*, 501 S.W.3d at 197. But overcoming the presumption of revocation is a low hurdle because it may be rebutted with circumstantial evidence "contrary to the presumption." *Id.*; *see also In re Est. of Capps*, 154 S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no pet.). The presumption may also be rebutted with a plausible explanation for the will's disappearance, such as through natural disaster or fraudulent destruction. *See In re Est. of Standefer*, 530 S.W.3d 160, 165 (Tex. App.—Eastland 2015, no pet.).

In this case, the court of appeals' decision turned on the first requirement: whether the Society proved the cause of nonproduction. We hold the court of appeals erred by not viewing Wylie's unsworn testimony as evidence and concluding the Society failed to carry its burden on this requirement. Wylie's statements are evidence for two reasons.

***First***, as guardian of Brown's person and estate, Wylie is an officer of the court. *Cf. Am. Gen. Fire & Cas. Co. v. Vandewater*, 907 S.W.2d 491, 493 n.2 (Tex. 1995) ("A guardian ad litem is not an attorney

---

[11] *Shriner's Hosp. for Crippled Child. of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980).

for the child but an officer appointed by the court to assist in properly protecting the child's interests."). And "[w]hen, during an evidentiary hearing, counsel makes unsworn factual statements as an officer of the court, on the record and without objection from opposing counsel, such statements are properly considered as evidence." *Rasco v. Ducars Inv., LLC*, No. 02-21-00375-CV, 2022 WL 4373499, at *8 n.3 (Tex. App.—Fort Worth Sept. 22, 2022, no pet.)

Here, Wylie made her statements in her capacity as an officer of the court. At the first probate hearing, she introduced herself "as Ms. Brown's guardian for a number of years," and the hearing transcripts themselves list her appearances as "for the ward" and "guardian of Myrtle Dell Brown." The parties were also aware of Wylie's status as guardian.[12] As an officer of the court, Wylie's testimony is properly considered evidence.

***Second***, we disagree with the court of appeals that considering Wylie's testimony as evidence would conflict with our holding in *Banda v. Garcia*. *Banda* holds that "[n]ormally, an attorney's statements must be under oath to be considered evidence," but this general rule may be waived by an opponent's failure to object "when the opponent knows or should know that an objection is necessary." 955 S.W.2d at 272. In other words, an attorney's unsworn statements may be considered evidence "when the circumstances clearly indicate that the attorney is tendering

---

[12] Various statements in the record demonstrate the parties' awareness of Wylie's status as guardian of Brown's person and estate. At one point, the Society's counsel stated that her "goal was to bring in and probate a copy of a will . . . . All that was found was copies of the will found by Ms. Wylie as the guardian."

evidence on the record based on personal knowledge and the opposing party fails to object." *Vaccaro v. Raymond James & Assocs.*, 655 S.W.3d 485, 491-92 (Tex. App.—Fort Worth 2022, no pet.).

Here, all parties and the trial court were aware of Wylie's role at the probate hearing, yet no one objected to her not being sworn on the record. There is also no doubt Wylie's statements were tendered based on her personal knowledge because she conducted the search of Brown's home herself. *See Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005) (counsel's statements "clearly indicated [she] was tendering evidence on the record based on personal knowledge on the sole contested issue"). Because Wylie put all relevant parties—and the trial court itself—on notice that she was attempting to explain the cause of the original will's nonproduction, *Banda* does not prevent consideration of her testimony.

We recognize, of course, that there was no party opposing the application for probate. The court of appeals distinguished *Banda* on this basis, reasoning that the Society "is not 'the opponent' of Wylie's comments at the hearing and has not identified 'the opponent' who could have waived the oath requirement in this case." ___ S.W.3d ___, 2022 WL 17813757, at *8 n.6. But the trial court itself was testing the sufficiency of the Society's application, and the court did not make a ruling at the hearing that Wylie's testimony was inadmissible. Thus, the Society did not have an opportunity to cure any deficiency. *See McLean v. Livingston*, 486 S.W.3d 561, 565 (Tex. 2016) (explaining that Texas law favors allowing parties the opportunity to cure procedural defects). Under these circumstances, Wylie's testimony should be considered evidence.

12

When Wylie's testimony is considered, we conclude that the Society established the cause of nonproduction as a matter of law. Wylie's search of Brown's home and Yow's search of his office were on par with searches held to be reasonably diligent in other cases.[13] No evidence refutes Wylie's or Yow's testimony, and the trial court itself found that "a diligent search of [Brown's] home and safe deposit box" occurred. The trial court's legal conclusion—that the evidence of the cause of the will's nonproduction was insufficient—therefore conflicts with its own factual finding. Accordingly, even assuming the cause of nonproduction must be proved by a preponderance of the evidence in an uncontested proceeding, the Society carried its burden on this requirement.[14]

The court of appeals therefore should have proceeded to consider whether the Society rebutted the presumption of revocation. Because the court did not address that issue, we remand for it to do so in the first instance.[15]

---

[13] *See, e.g.*, *Standefer*, 530 S.W.3d at 168; *Catlin*, 311 S.W.3d at 700-01; *Capps*, 154 S.W.3d at 244-45.

[14] Deciding the proper burden of proof is unnecessary to our disposition, but on remand the court of appeals must resolve any issues it did not reach. In doing so, that court should address the Society's issue regarding the proper burden of proof.

[15] The Society also challenges the court of appeals' reasons for concluding it was not entitled to a jury trial. But because the Society failed to obtain a ruling from the trial court rejecting its jury demand, the court of appeals committed no reversible error in holding that the Society failed to preserve its complaint. *Cf. Browder v. Moree*, 659 S.W.3d 421, 423 (Tex. 2022) ("If a trial court indicates that it will proceed with a bench trial in a case where a jury demand was timely perfected, a demanding party that still wishes to

We hold the court of appeals erred in refusing to consider Wylie's testimony as evidence, which was sufficient as a matter of law to satisfy the Estates Code's requirement that the applicant establish the cause of nonproduction of an original will. Accordingly, without hearing oral argument, TEX. R. APP. P. 59.1, we grant the petition for review and reverse the court of appeals' judgment affirming the trial court's order denying the Society's application for probate. We remand for the court of appeals to address whether the Society rebutted the presumption of revocation—including, if necessary, the applicable burden of proof for such a showing when, as here, the proceeding is uncontested.

**OPINION DELIVERED:** August 30, 2024

---

have a jury trial must ensure that the court is aware of the demand. But neither our procedural rules nor this Court's decisions require a party that has obtained an adverse ruling from the trial court to take the further step of objecting to that ruling to preserve it for appellate review."). Should the case be remanded to the trial court, however, the Society would be free to reassert its jury demand.