**Opinion filed March 5, 2020**



## In The

# Eleventh Court of Appeals

_____

## No. 11-19-00152-CV

_____

## BORDERLINE MANAGEMENT, LLC, Appellant

## V.

## SUZANN RUFF, Appellee

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. C46164-1**

## M E M O R A N D U M   O P I N I O N

This appeal arises out of a dispute between Suzann Ruff and her son, Michael Ruff, over Michael's control and disposition of over 4,600 acres of real property in Palo Pinto County (the Palo Pinto Property).[1] However, the Palo Pinto Property is not the only property that Suzann and Michael are fighting over, and when this suit was filed, Suzann had already sued Michael in the Dallas County Probate Court

---

[1]Because several individuals involved in this dispute have the same surname, we will refer to them by their first names in this opinion.

No. 1. Michael successfully moved to compel arbitration of those claims, and the trial court stayed this case during the arbitration proceedings.

The arbitration panel found that Michael owed a fiduciary duty to Suzann and committed fraud, misapplication of fiduciary property, conversion, and negligence. The arbitration panel awarded Suzann $49,000,000 and imposed a constructive trust in Suzann's favor (1) on Michael's interests "of whatever nature, in any entity which he formed or invested, in whole or in part with monies or property misappropriated from, and originating with" Suzann and (2) on "any real property belonging to or originating from property belonging to [Suzann], in all her capacities, and held or owned, in whole or in part, by [Michael], in any capacity, relating in any way to the so-called Palo Pinto County, Texas, properties." The arbitration panel listed specific properties that were subject to the constructive trust, including "4,683 acre real property asset located in Palo Pinto County, Texas."

Suzann filed a second amended petition in this case that named Michael; Mark Ruff, who is Suzann's son and Michael's brother; two trusts; and fifteen entities, including Borderline Management, LLC, as defendants. More than a year after it was served with Suzann's second amended petition, Borderline filed a motion to dismiss pursuant to the Texas Citizens Participation Act. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015) (the TCPA).[2] The trial court denied the motion to dismiss, determined that the motion was frivolous and solely intended to delay, and awarded Suzann attorney's fees in the amount of $14,355.

---

[2]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12 (H.B. 2730) (to be codified at TEX. CIV. PRAC & REM CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). Because the underlying lawsuit was filed prior to September 1, 2019, the law in effect before September 1 applies. *See id.* §§ 11–12. For convenience, all citations to the TCPA in this opinion are to the version of the statute prior to September 1, 2019. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

In its first three issues, Borderline asserts that the trial court erred when it determined that the motion to dismiss was untimely, that Borderline failed to demonstrate good cause to extend the time to file the motion to dismiss, and that Borderline failed to establish that the TCPA applies to Suzann's claims. In its fourth issue, Borderline requests that this court "render a dismissal as a matter of law in Borderline's favor" because Suzann failed to establish by clear and specific evidence a prima facie case for each essential element of her claims. In its final issue, Borderline argues that the trial court erred when it awarded attorney's fees to Suzann because the motion to dismiss was neither frivolous nor solely intended to delay and because Suzann failed to provide sufficient evidence of reasonable attorney's fees.

We reverse the trial court's award of attorney's fees in the amount of $14,355 and remand the issue of the amount of attorney's fees to be awarded to Suzann to the trial court for further proceedings. We affirm the trial court's order in all other respects.

*Background Facts*

Because the issue in this appeal is whether the trial court erred when it denied Borderline's motion to dismiss, we do not set out an exhaustive recitation of the litigation between Michael and Suzann. Rather, we start with Borderline's formation and focus on Suzann's claims against Borderline.

The arbitrators issued the award in Suzann's favor on December 7, 2017. On January 12, 2018, the probate court signed an order in which it prohibited Michael "from moving any assets currently under his control exceeding $50,000, including assets of entities of which he is the president, manager, or president or manager of the general partner, all of which are now subject to the AAA imposed constructive trust." On January 11, 2018, the trial court ordered Michael to produce documents relevant to the Palo Pinto Property by January 15, 2018, and to sit for deposition on

3

January 18, 2018, and ordered one of the entity defendants to produce a corporate representative for deposition on January 19, 2018.[3]

On January 23, 2018, Matthew Zucker, who is affiliated with Michael's attorney's law firm, filed a certificate of formation for Borderline with the Texas secretary of state. Mark is the only member of Borderline, and Greg Ginn, an accountant, is its sole manager. Michael resigned as the manager of certain entities involved in the development of the Palo Pinto Property, and Borderline became the manager of those entities. Michael, however, remained in effective control of the entities.

Suzann filed the second amended petition on February 14, 2018, and the third amended petition on February 21, 2018. Borderline was served with the second amended petition on March 1, 2018. In both the second and third amended petitions, Suzann alleged that the case involved her "entrustment of the care and management of her assets" to Michael and "his systematic misappropriation of those assets for his own personal purposes and pecuniary gain." Suzann alleged that the "other defendants" had "assisted and participated in [Michael's] conduct." Suzann made detailed allegations about the accumulation of wealth by her and her husband, Arthur; Arthur's death; her decision to entrust her assets to Michael; and Michael's misappropriation of the assets, including the Palo Pinto Property. Suzann asserted that Michael created "the various entity defendants" to further his scheme to hide Suzann's assets and that, even after the arbitration award, he "continued to use these entities, now with the assistance of his brother Mark, to do so." In both petitions, Suzann asserted claims for (1) breach of fiduciary duty against Michael and "any of the entity defendants holding constructive trust property," (2) knowing participation in Michael's breach of fiduciary duty against "[a]ll of the entity [d]efendants" and

---

[3]This order is not in the appellate record, but is referenced in the evidence relied upon by the parties.

4

Mark, (3) conspiracy against "[e]ach of the entity [d]efendants" to commit the "misdeeds" found in the arbitration award and the "continuing breaches of fiduciary duty," and (4) fraudulent conveyance of the Palo Pinto Property against Michael, "in conspiracy with and through other [d]efendants."[4]

Borderline filed its original answer and special exceptions to Suzann's third amended petition on March 26, 2018. Borderline objected that Suzann had not sufficiently pleaded any of her claims against Borderline.

On June 11, 2018, Suzann filed a fourth amended petition. As relevant to this appeal, Suzann added factual allegations that the "other defendants" had benefited from Michael's wrongful conduct and were "holding or otherwise in possession of" the assets that Michael had misappropriated; that Michael created as many as 300 entities to hide Suzann's assets; that, after the arbitration award, Michael had used Suzann's "assets and money to create new entities to further his ongoing scheme, including Defendant Borderline"; that Michael controlled these entities; and that these entities were being used as a "mere tool" by Michael "to perpetrate fraud, evade his fiduciary duties to [Suzann], and hide the assets he misappropriated from her."

Suzann alleged claims for (1) breach of fiduciary duty against Michael and "any of the entity defendants holding fiduciary property," (2) knowing participation in Michael's breach of fiduciary duty against "[a]ll of the entity [d]efendants" and Mark, (3) conspiracy in Michael's fraud and breach of fiduciary duty against "[e]ach of the entity [d]efendants," and (4) fraud against Michael, "in conspiracy with and through other [d]efendants." Borderline filed supplemental special exceptions to

---

[4]Throughout this case, Suzann has also (1) asserted that a constructive trust has been placed on any interest that Michael has, or has transferred, in any of the defendant entities and in any other entity that was related to the development and marketing of the Palo Pinto Property and that was acquired with funds obtained from Suzann and (2) requested that any entity that participated in the marketing and sale of tracts of land from the Palo Pinto Property be required to account for the proceeds of the sales.

Suzann's fourth amended petition and asserted that the "minor revisions" in the fourth amended petition had not corrected the pleading deficiencies.

The trial court heard Borderline's special exceptions on June 14, 2018. During the hearing, Suzann's counsel stated that he was "perfectly willing to replead a little bit more" but that he needed documents from Michael first. The trial court orally ruled:

> Just only as to fiduciary duty, I'm going to grant the special exceptions on that. You need to replead what the basis of your special exception -- or the factual basis for alleging a fiduciary duty against Borderline. I'm going to do that.
>
> I'm not saying that's all I'm going to do, but I'm going to grant that part of it. That's the one part that's troubling me there from the get-go.

In August and September 2018, a number of defendants filed for bankruptcy and removed the case to bankruptcy court. The bankruptcy court granted Suzann's motion to sever the claims against the non-debtors and remanded those claims to the trial court. On October 3, 2018, Suzann filed a fifth amended petition that dropped the claims against the defendants that were in bankruptcy and added ten new entities as defendants. Suzann did not make any substantive changes to the factual allegations or to the causes of action.

On February 14, 2019, Suzann filed a sixth amended petition. Suzann added factual allegations that Borderline was "set up by [Michael] (or at his direction)"; that Michael had engaged in discovery abuse and refused to obey court orders; that some of the transactions were "merely sham transactions intended by [Michael] to hide the wealth transfer and launder his mother's money"; that on January 12, 2018, the probate court signed an order in which it prohibited Michael from moving assets; that on January 30, 2018, the trial court signed an order in which it prohibited all the defendants from moving or transferring any assets in Palo Pinto County absent

6

advance order of the trial court; that, in response to those orders, Michael resigned as manager of several entities; that Michael then created, or had Mark create, Borderline, which took over the management of several of the entities; and that the "purpose for creating Borderline was to allow [Michael] to evade the Orders of the Probate Court and this Court prohibiting the movement of assets since he would supposedly not be doing so directly."

Suzann asserted a claim for breach of fiduciary duty against Michael and "any of the entity defendants in existence at the time of the Probate Court Judgment holding fiduciary property." She also asserted a claim for knowing participation in Michael's breach of fiduciary duty against "[a]ll of the entity [d]efendants" and specifically alleged that Mark and Borderline were "now also participating in ongoing breaches." Suzann continued to allege that "[e]ach of the entity [d]efendants" conspired with Michael to commit fraud and breach of fiduciary duty and that Michael committed fraud "in conspiracy with and through other [d]efendants."

On March 11, 2019, Borderline filed a motion to dismiss under the TCPA. Borderline argued that Suzann's claims were based on, related to, or in response to Borderline's exercise of its right of association and that Suzann could not produce clear and specific evidence to establish a prima facie case of each essential element of her claims. Suzann responded that the motion to dismiss was not timely, that Borderline had failed to establish that the TCPA applied, and that she had established a prima facie case for each essential element of her claims. Suzann also asserted that the motion to dismiss was frivolous or solely intended to delay and requested that she be awarded the costs and attorney's fees that she incurred to respond to the motion. Borderline replied that the sixth amended petition added material factual allegations against Borderline and specifically named Borderline in the claim for knowing participation in breach of fiduciary duty. Borderline asserted that it timely

7

filed the motion to dismiss within sixty days of being served with the sixth amended petition.  Alternatively, Borderline argued that there was good cause to extend the time to file the motion to dismiss because the trial court had granted Borderline's special exceptions and required Suzann to replead her claims.

The trial court denied Borderline's motion to dismiss, awarded Suzann attorney's fees in the amount of $14,355, and severed Suzann's claims against Borderline from her claims against the other defendants.  In findings of fact and conclusions of law, the trial court determined that the motion to dismiss was untimely, that there was not good cause to extend the time to file the motion to dismiss, that Borderline failed to establish that the TCPA applied to Suzann's claims, and that the motion to dismiss was frivolous and solely intended to delay the proceedings.

*Analysis*

In its first issue, Borderline asserts that the trial court erred when it determined that the motion to dismiss was untimely.  We review de novo the trial court's ruling on a TCPA motion to dismiss. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Kinder Morgan SACROC, LP v. Scurry Cty.*, 589 S.W.3d 889, 896 (Tex. App.—Eastland 2019, pet. filed) (applying de novo standard of review to trial court's determination that TCPA motion was untimely).  When we conduct this review, we "consider the pleadings and the supporting evidence in the light most favorable to the nonmovant." *Kinder Morgan*, 589 S.W.3d at 896 (quoting *ETC Tex. Pipeline, Ltd. v. Addison Exploration & Dev., LLC*, 582 S.W.3d 823, 832 (Tex. App.—Eastland 2019, pet. filed)).

A party triggers the TCPA's dismissal procedure by filing a motion to dismiss. CIV. PRAC. & REM. §§ 27.003(a), .005(b); *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).  The TCPA requires that the motion be filed no later than the sixtieth day after the date of service of the legal action.  CIV.

PRAC. & REM. § 27.003(b). A party who fails to timely file a motion to dismiss forfeits the protections of the statute. *ETC Tex. Pipeline*, 582 SW.3d at 832. However, on a showing of good cause, the trial court may extend the time to file a motion to dismiss. CIV. PRAC. & REM. § 27.003(b); *Kinder Morgan*, 589 S.W.3d at 896.

Borderline does not dispute that the second, third, fourth, and fifth amended petitions were each a "legal action," as defined by the TCPA, *see* CIV. PRAC. & REM. § 27.001(6) (defining "legal action" to include a lawsuit, a cause of action, a petition, and any other judicial filing that requests legal or equitable relief), or that it filed the motion to dismiss more than sixty days after it was served with each of these petitions. Rather, Borderline contends that the service of the sixth amended petition restarted the time period in which to file the motion to dismiss because the trial court granted Borderline's special exceptions, because Suzann did not plead "any coherent, legally recognizable causes of action against Borderline" prior to the claims asserted in the sixth amended petition, and because the sixth amended petition asserted an additional cause of action against Borderline.

A petition that gives fair notice of a claim starts the time period in which to file a TCPA motion to dismiss. *Kinder Morgan*, 589 S.W.3d at 898, 900. An amended pleading that does not add new parties or claims does not restart the statutory deadline for filing a motion to dismiss. *Id.* at 897. However, if a party files an amended petition that contains claims based upon new factual allegations, the TCPA deadline may be restarted as to the newly added substance. *Id.*; *see also Campone v. Kline*, No. 03-16-00854-CV, 2018 WL 3652231, at *6 (Tex. App.—Austin Aug. 2, 2018, no pet.) (mem. op.) (noting second and third amended petitions added "new and distinct injuries" based on factual allegations about instances of alleged defamation, aside from statements alleged in original petition, and motion to dismiss was timely as to new allegations). "[A]dditional factual details in an

9

amended petition 'do not restart the time for filing a motion to dismiss if the same essential factual allegations as to the claim were presented in an earlier petition.'" *Kinder Morgan*, 589 S.W.3d at 897 (quoting *ETC Tex. Pipeline*, 582 S.W.3d at 833); *see also Jordan v. Hall*, 510 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (concluding that TCPA filing deadline was not reset by the filing of a supplemental petition when the factual allegations underlying both the original and supplemental petitions were the same).

Borderline asserts that, because the trial court granted one of Borderline's special exceptions, it did not have fair notice of Suzann's claims before she filed the sixth amended petition and was not required to file a motion to dismiss until Suzann sufficiently pleaded her claims. However, we need not address the impact, if any, of a trial court's grant of a party's special exceptions on the time period in which to file a motion to dismiss because the record reflects that the trial court granted only Borderline's special exception to Suzann's claim for breach of fiduciary duty; that Suzann did not assert a claim for breach of fiduciary duty against Borderline in any of her petitions; and that, in the sixth amended petition, Suzann clearly stated that she had not brought a claim for breach of fiduciary duty against Borderline.

In its findings of fact and conclusions of law, the trial court determined that the second amended petition "included claims against Borderline for conspiracy and knowing participation in breach of fiduciary duty."[5] The only change that Suzann made in the third amended petition to the claim for breach of fiduciary duty was to add the allegation that she had suffered damages of at least $15,000,000. Therefore,

---

[5]Because Borderline has not challenged this finding and because the finding is supported by the record, we must accept it as true. *See McGalliard v. Kuhlmann*, 722 SW.2d 694, 696 (Tex. 1986); *Odessa Tex. Sheriff's Posse, Inc. v. Ector Cty.*, 215 S.W.3d 458, 467 (Tex. App.—Eastland 2006, pet. denied). Further, to the extent that the trial court's finding is actually a conclusion of law, we have conducted a de novo review of the second amended petition and agree that the only causes of action asserted against Borderline were for conspiracy and knowing participation in breach of fiduciary duty. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *In re Estate of Standefer*, 530 S.W.3d 160, 164 (Tex. App.—Eastland 2015, no pet.).

Suzann did not assert a claim for breach of fiduciary duty against Borderline in the third amended petition.

Borderline filed special exceptions to Suzann's third amended petition. As to the claim for breach of fiduciary duty, Borderline contended that it was "impossible to determine" from Suzann's allegations whether the claim was "even intended to be asserted against Borderline." Borderline specifically argued that it was "not mentioned by name or description" in the claim; was not holding any constructive trust property; and had no relationship with, or duty to, Suzann.

Suzann's live pleading at the time that the trial court heard Borderline's special exceptions was the fourth amended petition. The only substantive changes to Suzann's claim for breach of fiduciary duty were the substitution of "fiduciary property" for "constructive trust property" and the addition of the allegation that Michael and "the entity defendants in privity with him[ ] have a continuing duty of full disclosure." The trial court granted Borderline's special exception to the claim for breach of fiduciary duty and ordered Suzann to replead "the factual basis for alleging a fiduciary duty against Borderline."

Suzann responded by filing the sixth amended petition, in which she alleged that Michael and "any of the entity defendants in existence at the time of the Probate Court Judgment holding fiduciary property" had continuing fiduciary duties to Suzann. The only other substantive change in the claim for breach of fiduciary duty between the fourth and sixth amended petitions was the allegation that the "actual" damages from the continuing breaches were "at least $15,000,000.00, and as much as $60,000,000 without considering legal interest, attorneys' fees, or punitive damages."

The record reflects (1) that Suzann did not assert a claim for breach of fiduciary duty against Borderline in either the second or third amended petition, (2) that Borderline recognized in its special exceptions that Suzann had not asserted

11

a claim for breach of fiduciary duty against Borderline, and (3) that Suzann made no substantive change in her fourth or fifth amended petitions that could be construed to assert a claim for breach of fiduciary duty against Borderline. Further, the trial court found that Suzann "clarified" in her sixth amended petition "certain of the asserted [causes] of action" did not apply to Borderline and that the sixth amended petition "reduced the claims" against Borderline. We cannot conclude that the trial court's grant of a special exception that leads only to a clarification that a claim is not being asserted against a TCPA movant tolls the time period in which to file a TCPA motion to dismiss. *See Jordan*, 510 S.W.3d at 199 (holding that the time period in which to file a TCPA motion to dismiss is not tolled by the trial court's grant of special exceptions when the petition filed in response to the trial court's order does not add new claims and relies upon the same factual allegations underlying the original petition).

At the time of the hearing on Borderline's special exceptions, Suzann's live pleading was the fourth amended petition. The trial court did not grant Borderline's special exceptions as to Suzann's claims for conspiracy and knowing participation in breach of fiduciary duty. Therefore, Borderline's time period in which to file a motion to dismiss as to those claims began to run, at the latest, when it was served with the fourth amended petition.[6] The sixth amended petition restarted that time period only if it alleged a new claim or made substantive new factual allegations that changed the essential nature of the claims. *See Kinder Morgan*, 589 S.W.3d at 897.

Borderline first argues that the time period in which to file a motion to dismiss was reset by the sixth amended petition because Suzann amended her claim for

---

[6]Because it is unnecessary to the disposition of this appeal, we need not address whether Borderline's time period in which to file a motion to dismiss began to run when it was served with the second amended petition.

knowing participation in breach of fiduciary duty to specifically name Borderline.[7] However, in the second, third, and fourth amended petitions, Suzann asserted a claim for knowing participation in breach of fiduciary duty against "[a]ll of the entity [d]efendants." The trial court found that this allegation was sufficient to assert a claim against Borderline for knowing participation in breach of fiduciary duty. In the sixth amended petition, Suzann specifically named Borderline as a defendant that allegedly engaged in the knowing participation of breach of fiduciary duty.[8] But, because Suzann had asserted a claim for knowing participation in breach of fiduciary duty against Borderline beginning in the second amended petition, the specific inclusion of "Borderline" in the sixth amended petition did not allege a new claim against Borderline. *See Chandni I, Inc. v. Patel*, No. 08-18-00107-CV, 2019 WL 6799747, at *3 (Tex. App.—El Paso Dec. 13, 2019, no pet. h.) (concluding that

---

[7]The conspiracy claim alleged in the sixth amended petition is exactly the same as the conspiracy claim alleged in the fourth amended petition:

> Each of the entity Defendants conspired, and continues to conspire, with Michael Ruff to commit the misdeeds found to have been committed by Michael Ruff in the Final Award and the continuing fraud and breaches of fiduciary duty. Each is charged with the knowledge of the person in control of that entity, which in each case is Michael Ruff.

[8]In the fourth amended petition, Suzann alleged:

> All of the entity Defendants knowingly participated in [Michael]'s breaches of fiduciary duty and continue to do so. Defendant Mark Ruff is now also participating in ongoing breaches. [Michael] was either the President, General Partner, Manager of each of the entities or the President, General Partner or Manager of the entity which served as the General Partner or Manager of each of these entities. [Michael] was the settlor of both of the Trust Defendants and the Trustee of both at some time. His knowledge is, as a matter of law, imputed to each of the entities because of his controlling position within each entity.

In the sixth amended petition, Suzann alleged:

> All of the entity Defendants knowingly participated in [Michael]'s breaches of fiduciary duty and continue to do so. Defendants Mark Ruff and Borderline are now also participating in ongoing breaches. [Michael] is or was either the President, General Partner, Manager of each of the entities or the President, General Partner or Manager of the entity which served as the General Partner or Manager of each of these entities. At all material time[s], [Michael] has controlled the entities. [Michael] was the settlor of both of the Trust Defendants and the Trustee of both at some time. His knowledge is, as a matter of law, imputed to each of the entities because of his controlling position within each entity.

amended petition that named defendant individually in fraud cause of action did not assert a new claim because it was based on the same essential factual allegations as were asserted in prior petition).

Borderline also argues that the sixth amended petition reset the time period in which to file a motion to dismiss because it contained substantively new factual allegations that changed the essential nature of the claims. Borderline specifically points to the allegations in the sixth amended petition that Borderline was "set up" by Michael, or at his direction; that Michael engaged in discovery abuse and refused to obey court orders; that some of the transactions made by Michael were sham transactions intended to hide the wealth transfer and to launder Suzann's money; that, in response to orders by the probate court and the trial court, Michael resigned as manager of several entities and created or had Mark create Borderline; and that Borderline was created to allow Michael to evade orders in which the probate court and the trial court prohibited the movement of assets.

However, in the fourth amended petition, Suzann alleged that Michael had engaged in the systematic misappropriation of her assets for his own personal purposes and pecuniary gain, that Michael "engaged in a pattern of deception and manipulation to accomplish a wealth transfer from his mother to himself or entities under his direction and control," and that Michael "used his fiduciary status to obscure or disguise many of the transactions." Suzann alleged that, "[t]hroughout this process of misappropriating [her] wealth," Michael "created various entities, perhaps as many as 300, but certainly more than 100[,] to further his scheme to hide [her] assets" and that, since the arbitration award, Michael had used her "assets and money to create new entities to further his ongoing scheme, including Defendant Borderline." Finally, Suzann alleged that Michael made "[a]ll of the decisions as to the management or running of these entities."

14

The factual allegations in the sixth amended petition, although more detailed, essentially remain the same as the factual allegations in the fourth amended petition. Specifically, Suzann alleged in both petitions that Michael misappropriated her property, that he used various entities to hide her assets, and that Borderline was one of the entities that Michael used. The additional factual allegations that Michael intended to use Borderline to evade orders from the trial court and the probate court in which those courts prohibited him from moving assets does not change the essential nature of Suzann's claims. *See Mancilla v. Taxfree Shopping, Ltd.*, No. 05-18-00136-CV, 2018 WL 6850951, at *3 (Tex. App.—Dallas Nov. 16, 2018, no pet.) (mem. op.) (concluding that additional factual allegations in amended petition that did "nothing more that provide specificity" of claim of which movant had notice in prior petition and that did not alter the essential nature of the action did not restart time period in which to file a motion to dismiss).

We hold that the sixth amended petition did not assert a new claim against Borderline and did not contain new factual allegations that changed the essential nature of the existing claims. Therefore, the sixth amended petition did not reset the time period in which Borderline could file a motion to dismiss under the TCPA, and the trial court did not err when it determined that Borderline's motion to dismiss was untimely. *See Kinder Morgan*, 589 S.W.3d at 897, 900. We overrule Borderline's first issue.

In its second issue, Borderline alternatively argues that, if the motion to dismiss was untimely, the trial court erred when it found that there was no good cause to extend the time to file the motion.

On a showing of good cause, the trial court may extend the time to file a motion to dismiss under the TCPA. Civ. Prac. & Rem. § 27.003(b); *see also Kinder Morgan*, 589 S.W.3d at 901. "[G]ood cause is established by showing that the failure involved was an accident or mistake, not intentional or the result of conscious

indifference." *Kinder Morgan*, 589 S.W.3d at 901 (quoting *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) (per curiam)); *see also Sullo v. Kubosh*, No. 01-18-00418-CV, 2019 WL 6120878, at *24 n.7 (Tex. App.—Houston [1st Dist.] Nov. 19, 2019, no pet. h.).

We review the trial court's decision to deny an extension of time to file the motion to dismiss for an abuse of discretion. *Kinder Morgan*, 589 S.W.3d at 901. A trial court abuses its discretion if its ruling is arbitrary or unreasonable, is made without regard to guiding legal principles, or is not supported by the evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

As set out above, Suzann has consistently asserted the same causes of action against Borderline throughout this case, and the alleged facts have remained essentially the same since the fourth amended petition. Borderline, however, has failed to offer any explanation as to why it could not have filed a timely motion. Rather, the record reflects that, instead of filing a motion to dismiss, Borderline engaged in litigation for almost a year. It filed special exceptions, propounded written discovery, answered written discovery, took Suzann's deposition, filed a motion to compel and for sanctions, and signed the bankruptcy petition for some of the entities that it manages. Only after the bankruptcy court severed Suzann's claims against the non-debtor entities and remanded those claims to the trial court did Borderline file its motion to dismiss.

On this record, we cannot conclude that the trial court abused its discretion when it determined that Borderline failed to demonstrate good cause for its failure to file a timely motion to dismiss. *See Sullo*, 2019 WL 6120878, at *25 (holding that movant failed to establish good cause that would allow the consideration of a motion to dismiss that was filed years after movant was served with a legal action setting out the only causes of action that had been asserted against the movant and

16

after dispositive motions had been filed on those causes of action); *Campone*, 2018 WL 3652231, at \*5 (holding that a trial court does not abuse its discretion when it denies a motion to extend time if the circumstances surrounding the alleged communication did not change between the two petitions and there is no explanation of why the defendant could not have sought dismissal within sixty days of being served with the legal action). We overrule Borderline's second issue.

Based on our resolution of Borderline's first two issues, we need not address Borderline's third and fourth issues in which it argues that the trial court erred when it determined that Borderline failed to establish that the TCPA applied to Suzann's claims and when it failed to consider whether Suzann established by clear and specific evidence a prima facie case of each essential element of her claims. *See* TEX. R. APP. P. 47.1.

In its fifth issue, Borderline complains that the trial court erred when it awarded Suzann attorney's fees of $14,355 because the motion to dismiss was neither frivolous nor solely intended to delay and because the evidence is insufficient to support the amount of fees awarded. "We review the trial court's decision to award attorney's fees under the TCPA for an abuse of discretion." *Caliber Oil & Gas, LLC v. Midland Visions 2000*, No. 11-19-00099-CV, 2019 WL 6337705, at \*11 (Tex. App.—Eastland Nov. 27, 2019, no pet. h.); *see also Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied).

"[T]o secure an award of attorney's fees from an opponent, the prevailing party must prove that: (1) recovery of attorney's fees is legally authorized, and (2) the requested attorney's fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). Borderline contends that Suzann failed to establish either prong.

The TCPA authorizes a trial court to award costs and reasonable attorney's fees to the nonmovant if the motion to dismiss was frivolous or solely intended to delay. CIV. PRAC. & REM. § 27.009(b); *Caliber Oil & Gas*, 2019 WL 6337705, at *11. The record reflects that Borderline's counsel admitted during the hearing on the motion to dismiss that, although Borderline was the manager of some of the entities, Michael was "still in charge of this operation out there at Clayton Mountain." In its findings of fact, the trial court found that two of the entities that had filed for bankruptcy were managed by Borderline, but ultimately controlled by Michael. The trial court also noted that it and other courts had found that Michael had "engaged in a pattern of delay and obstruction." Further, Borderline, as manager, filed for bankruptcy protection for several of the entities and removed this case to the bankruptcy court, which again delayed the case. Finally, Borderline engaged in extensive discovery and motion practice before it filed the motion to dismiss, a motion that stayed all further discovery. *See* CIV. PRAC. & REM. § 27.003(c).

On this record, we cannot conclude that the trial court abused its discretion when it determined that Borderline filed the motion to dismiss for the sole purpose of delay. Because the TCPA authorizes an award of attorney's fees to the nonmovant when a motion to dismiss is solely intended to delay, we need not address whether the trial court erred when it determined that the motion to dismiss was frivolous. *See* TEX. R. APP. P. 47.1.

Borderline also argues that the evidence is insufficient to support the amount of attorney's fees awarded to Suzann. Texas uses the "lodestar method," which is essentially a "short hand version" of the *Arthur Anderson*[9] factors, to determine reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 496.

---

[9]*Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

18

Under the lodestar method, the factfinder must first determine the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The factfinder then multiplies the number of hours that counsel worked on the case by the applicable rate to determine the base fee or lodestar. *Id.* The base fee is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 499. The factfinder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* at 500–01.

It is the fee claimant's burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Id.* at 498. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each attorney performing the services. *Id.*[10]

"General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. Generalities about tasks performed provide insufficient information for the factfinder to meaningfully review whether the tasks and hours were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, *Rohrmoos Venture*, 578 S.W.3d at 502, there must be some evidence to inform the trial court of the time spent on specific tasks to enable the factfinder to meaningfully review the requested fees, *Long v. Griffin*, 442 S.W.3d 253, 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam) (reversing and remanding to redetermine attorney's fees when attorney testified to the time

---

[10]This evidentiary standard is the same for attorney's fees awarded as a fee-shifting sanction. *See Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709–10 (Tex. 2019) (per curiam) ("Although this case deals with attorney's fees awarded through a sanctions order, the distinction is immaterial because all fee-shifting situations require reasonableness.").

expended and the hourly rate but failed to provide evidence of the time devoted to specific tasks).

The only evidence to support the amount of attorney's fees awarded to Suzann was the five-paragraph affidavit of her counsel, Mark Donheiser. According to Donheiser, Borderline's motion to dismiss "involved fairly complex issues regarding a relatively new statute," and it was necessary to do "extensive legal research" in order "to prepare a fairly lengthy response." Donheiser was required to conduct "further research" after Borderline raised new issues and arguments in its reply brief.

Donheiser stated that he spent thirty-three hours to prepare the response and to argue at the hearing on the motion to dismiss. Donheiser charged his "usual and customary hourly rate" of $435, which resulted in attorney's fees of $14,355. Finally, Donheiser stated that he had "reviewed the factors to be considered as to the reasonableness of attorneys fees contained in Rule 1.04(b) of the Texas Disciplinary Rules of Professional Conduct" and that, based on those factors, it was his opinion that the work performed and the attorney's fees of $14,355 were reasonable and necessary.

Donheiser did not segregate the total time between the tasks that he performed and did not specify when he performed the work. Nor did he provide any billing records. Without details about the work done and how much time was spent on each task, Donheiser's affidavit "lacks the substance required to uphold a fee award." *Rohrmoos Venture*, 578 S.W.3d at 505.

We overrule Borderline's fifth issue to the extent that Boderline complains that the trial court erred when it determined that the motion to dismiss was solely intended to delay. We sustain Borderline's fifth issue to the extent that Boderline complains about the amount of attorney's fees awarded by the trial court, reverse the trial court's award of $14,355 for attorney's fees, and remand the issue to the trial

20

court for a redetermination of fees. *See El Apple*, 370 S.W.3d at 765 (concluding that, because record did not provide sufficient evidence to support discretionary award of attorney's fees under the Texas Commission on Human Rights Act, case should be remanded to the trial court for a redetermination of fees); *see also Rohrmoos Venture*, 578 S.W.3d at 505; *Long*, 442 S.W.3d at 256.

*This Court's Ruling*

We reverse that portion of the trial court's order in which it awarded Suzann $14,355 for attorney's fees that she incurred to respond to Borderline's motion to dismiss, and we remand that issue to the trial court for a redetermination of the amount of attorney's fees that Suzann is entitled to receive. We affirm the trial court's order in all other respects.

JIM R. WRIGHT
SENIOR CHIEF JUSTICE

March 5, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[11]

Willson, J., not participating.

---

[11]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.