**In the ESTATE OF Ruby P. JONES.**

**No. 09–05–505 CV.**

Court of Appeals of Texas, Beaumont.

Submitted on April 13, 2006.

Decided July 27, 2006.

Jeffrey W. Glass, Jeffrey W. Glass, P.C., Houston, for appellants.

Bruce M. Partain, Nancy Y. Hart, Wells, Peyton, Greenberg & Hunt, LLP, Beaumont, for appellee.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Betty Spain appeals a court order admitting her mother's 1983 will to probate.[1] The issue we consider is whether, under the circumstances here, an accurate photocopy of a valid unrevoked "lost" will may be admitted to probate without the testimony of a credible witness who read the "lost" will or heard it read. See Tex. Prob.Code Ann. § 85 (Vernon 2003). We affirm the order of the probate court.

---

1. Although Spain's two siblings joined in the notice of appeal, only Spain filed a brief.

## The Probate Proceedings

Spain's mother, Ruby Jones, died on September 8, 2001. Ruby Jones was survived by her husband, Luther Jones, Sr., and three adult children from a previous marriage. Luther Jones, Sr. filed an Application for Probate of Will and Issuance of Letters Testamentary. An anonymous caller informed the clerk's office that the will submitted with the application was not an original, but a copy. The probate court granted Luther, Sr.'s "oral trial amendment" to seek the probate of a will "that is not being produced in Court." See Tex. Prob.Code Ann. § 85.

The court admitted the copy of the will to probate and authorized the issuance of letters testamentary. Spain filed a Motion to Contest Admission of Will Not Produced in Court and Issuance of Letters Testamentary and For Determination of the Heirs of the Decedent. Luther, Sr. died on January 5, 2003. Spain filed a motion for partial summary judgment claiming, among other things, the heirs were not properly served with citation before the will was admitted to probate. See Tex. Prob.Code Ann. § 128 (Vernon 2003). The trial court granted Spain's motion, withdrew the will from probate, and revoked the letters testamentary.

Luther Jones, Jr., the independent executor of his father's estate, sought to admit the copy of Ruby's will to probate. He filed a First Amended Application for Probate of Will. After considering the evidence and testimony at trial, the probate court granted his application. Spain filed this appeal.

The only issue appellant presents on appeal is whether the contents of Ruby's will were sufficiently proven by the testimony of a credible witness who had read it or heard it read. See Tex. Prob.Code Ann. § 85. The issue assumes section 85 applies to this case. We conclude section 85 does not apply.

## The Proof Requirements

Section 88 of the Texas Probate Code sets forth proof requirements for probate of a will. See Tex. Prob.Code Ann. § 88 (Vernon 2003). Section 88(a) requires an applicant to prove the application was made within four years of the decedent's death, the court has jurisdiction and venue over the estate, and citation has been served and returned in accordance with the Probate Code. Id. § 88(a). Section 88(b) requires proof the will was valid and not revoked by the testator. Id. § 88(b). Section 84 sets requirements for proving a written will produced in court. See Tex. Prob.Code Ann. § 84(Vernon Supp.2005).[2] Under section 84(b), the applicant may prove an attested written will through the sworn testimony of one or more of the subscribing witnesses. Id. § 84(b).

■ Appellant asserts under section 85 additional proof is required in this case. See Tex. Prob.Code Ann. § 85. Section 85 provides the following requirements for a written will which cannot be produced in court:

A written will which cannot be produced in court shall be proved in the same manner as provided in the preceding Section for an attested written will or an holographic will, as the case may be, and the same amount and character of testimony shall be required to prove such will as is required to prove a written will produced in court; but, in addition thereto, the cause of its non-production must be proved, and such cause must be sufficient to satisfy the court that it

2. Section 84(a) provides, "If a will is self-proved as provided in this Code, no further proof of its execution with the formalities and

solemnities and under the circumstances required to make it a valid will shall be necessary."

cannot by any reasonable diligence be produced, and the contents of such will must be substantially proved by the testimony of a credible witness who has read it or heard it read.

*Id.* In other words, a proponent of a written will which cannot be produced in court must prove (1) the requirements for a valid written will to be admitted to probate, (2) the cause of the written will's non-production and that the will cannot be produced through reasonable diligence, and (3) the contents of the will "substantially" by a credible witness who has read the will or heard it read. See generally *In re Capps,* 154 S.W.3d 242, 244 (Tex.App.-Texarkana 2005, no pet.) (citing *Coulson v. Sheppard,* 700 S.W.2d 336, 337(Tex.App.-Corpus Christi 1985, no writ)).

### The Evidence Presented

The copy of Ruby's will admitted into evidence is dated March 4, 1983.[3] According to the copy, Ruby bequeathed all her "personal items" to her children equally and all of her other assets to her husband, Luther, Sr. The copy provided that in the event her husband predeceased her, the three children would receive all assets in equal shares. She made a specific bequest of her interest in two acres of land in Jasper County, Texas, to her husband and if he predeceased her, to her children and stepchildren in equal shares.

A copy of Luther, Sr.'s will, also executed on March 4, 1983, was admitted into evidence. His will was identified at trial as a "reciprocal" will, and was in the same format as the copy of Ruby's will admitted into evidence. The same witnesses and notary public signed both wills. Luther, Sr.'s will made specific bequests of certain personal property to various individuals. He left the two acres in Jasper County to Ruby unless she predeceased him, and then to his children and stepchildren equally. He gave Ruby a life estate in their house, and at the expiration of the life estate, the house went to his children. The remainder was left to Ruby, unless she predeceased him, and then to his children equally.

Leesa McMullen, a former legal assistant for the attorney who drafted Ruby's and Luther, Sr.'s wills, identified the copy of her signature on both wills and testified she signed the wills as a witness. She further testified that "normal procedure" would have been followed in executing the wills. McMullen explained the procedure as follows: the notary public would have sworn in McMullen and Harriet Leger, the other witness, before they served as witnesses, and the testator or testatrix would have declared to the notary and the witnesses in the notary's presence that the instrument was his or her last will and testament. Although McMullen testified she does not remember seeing Ruby execute her will, she assumes Ruby signed the will in her presence as part of normal procedure, and as evidenced by the recitations in the will.

The trial court admitted the deposition of Susan Martin into evidence. Martin,

---

**3.** The rules of evidence generally apply in probate proceedings "so far as practicable." Tex. Prob.Code Ann. § 22 (Vernon 2003). Spain made no objection when the copy was offered into evidence. Generally, when a trial court admits a duplicate of an original document into evidence, the court implicitly rules there is no genuine issue concerning the authenticity of the original, the copy is an accurate reproduction of the original, and under the circumstances it is not unfair to admit the copy into evidence. See Tex.R. Evid. 1001, 1003, 1008. In the probate of a will, the writing is itself the object of proof. In reviewing the record and the probate court's order in this case, however, it is apparent the judge as trier of fact considered the photocopy an accurate reproduction of a valid original will. See Tex.R. Evid. 1008.

the notary public who signed the wills, was the legal secretary for the attorney who drafted the wills. Although she did not remember Ruby Jones or her will, Martin identified her signature on the copy of Ruby's will and testified the witnesses signed in her and Ruby's presence. Martin further testified that the formalities of a self-proved will were observed. See Tex. Prob.Code Ann. § 59(Vernon 2003). She said the statements contained in the self-proving affidavit of Ruby's will were true and correct. Based on her familiarity with the format the drafting attorney typically used, Martin testified she recognized the copy of the will as a true and correct copy.

Luther, Jr. testified Spain, Ruby's daughter from a previous marriage, spent the night in the guest room of Ruby's and Luther, Sr.'s house the night Ruby passed away. According to Luther, Jr., Ruby kept her important documents in her clothes and in the guest room where Spain spent the night. The day after Ruby's death, Spain and her sisters came to the house. Luther, Jr. testified Spain told him she was taking Ruby's personal belongings because Spain "had a will" or "a copy of the will," and under the will, she and her siblings were entitled to Ruby's belongings. While observing Spain and Spain's family members removing Ruby's personal items from the house, Luther, Jr. informed Spain he could not find the will and asked for a copy. She agreed to bring a copy of the will upon her return to the house the next week.

Luther, Jr. testified he was aware that his father and stepmother executed wills together around 1983. He testified he had seen a copy of Ruby's will under which Ruby's children were to receive certain personal property. Luther, Jr. was unaware of any revocation or modification of Ruby's 1983 will. Luther, Jr. and his father searched the house for Ruby's will and located what they thought was the original. Later they realized it was a copy.

Spain testified the signature on the copy of the will was her mother's signature. Ruby told Spain "[t]wenty something years" before Ruby died that Ruby and Luther, Sr. had executed wills. Spain testified Ruby never told her she canceled or revoked the will. Spain claimed she had never seen the copy admitted at trial and denied telling anyone that she knew the will's contents. She testified she left the hospital after her mother died, spent that night at her mother's house, and slept in the guest room. She testified she told Luther, Jr. she thought she might have a "copy of the will," or "a will," and that she would bring it. Spain arrived at her mother's house about a week after the funeral with three trucks and two trailers to take Ruby's personal items. She informed Luther, Jr. she did not find Ruby's will. Although she admitted she brought the trucks because she thought she was going to receive a substantial amount of property, she denied knowing the terms of the will.

### The Probate Court's Findings

■ Appellant argues the evidence is legally insufficient to admit the will to probate. A no-evidence or legal sufficiency review must credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless the fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005); *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex.2003). If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Canchola*, 121 S.W.3d at 739.

■ The trial court included findings and conclusions in its order admitting the will to probate. Because no separate findings of fact were requested or filed, we

consider the findings of fact contained in the order as the basis for the order.[4] We also consider implicit omitted findings that are supported by the evidence and that support the order. *See* Tex.R. Civ. P. 299.

The probate court found, among other things, the following:

5. At the time the March 4, 1983 will was executed, Ruby P. Jones was of legal age, sound mind, and the will was executed with the formalities and solemnities and under the circumstances required by law to make the will a valid self-proved will.

6. Decedent left a valid written Will dated March 4, 1983, which was never revoked. The original of this valid written Will was lost and a photo-copy of this valid written Will was filed with the original Application for Probate of Will and Issuance of Letters Testamentary and admitted into evidence during the trial of this case.

7. Sufficient evidence exists to explain the non-production of the original will.

8. The contents of the lost will were substantially proved by the testimony and documentary evidence.

The court concluded, "The lost will dated March 4, 1983 is hereby proven, established and admitted to probate and recorded as the Last Will and Testament of Ruby P. Jones, Deceased."

■ As trier of fact, the probate judge determined the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819. The court found the contents of the "lost" will were substantially proved. The court admitted the "lost" will to probate, but did not further describe the contents of the will in a written order as required by section 91 of the Texas Probate Code when a written will is not in the custody of the court. *See* Tex. Prob.Code Ann. § 91 (Vernon 2003).[5] The court implicitly found the photocopy in its custody was a faithful, accurate reproduction of a valid original will.

---

4. The Texas Rules of Civil Procedure generally apply to probate proceedings if the rules are not in conflict with the Texas Probate Code. *See Nass v. Nass*, 149 Tex. 41, 228 S.W.2d 130, 131 (1950); *Bank of Tex., N.A. v. Mexia*, 135 S.W.3d 356, 362 (Tex.App.-Dallas 2004, pet. denied). Under Texas Rule of Civil Procedure 299a, findings of fact "shall not be recited in a judgment." However, if findings are recited in the judgment, and no one complains or requests findings, and there is no conflict with separately filed findings of fact, the findings of fact in the judgment should not be ignored on appeal. *See In the Interest of U.P.*, 105 S.W.3d 222, 229 n. 3 (Tex.App.-Houston [14th Dist.] 2003, pet. denied); *In the Interest of Castillo*, 101 S.W.3d 174, 179 (Tex.App.-Amarillo 2003, pet. denied); *Hill v. Hill*, 971 S.W.2d 153, 157 (Tex.App.-Amarillo 1998, no pet.); *Kondos Entm't, Inc. v. Quinney Elec., Inc.*, 948 S.W.2d 820, 826(Tex.App.-San Antonio 1997) (Duncan, J., dissenting), *rev'd*, 988 S.W.2d 212 (Tex.1999). A conflict exists in the case-law concerning Rule 299a's application. *See, e.g., Frommer v. Frommer*, 981 S.W.2d 811, 814 (Tex.App.-Houston [1st

Dist.] 1998, pet. dism'd) (holding that if findings of fact and conclusions of law are recited in a judgment they cannot form the basis of a claim on appeal); *Sutherland v. Cobern*, 843 S.W.2d 127, 131 n. 7 (Tex.App.-Texarkana 1992, writ denied) (Findings of fact contained in the body of a judgment may not be considered on appeal and an appellate court should review the case as one in which no findings of fact were made.). Even if we reviewed the case as though no express findings were made, we would presume all necessary findings to support the order. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

5. Section 91 provides:

If for any reason a written will is not in the custody of the court, or if the will is oral, the court shall find the contents thereof by written order, and certified copies of same as so established by the court may be recorded in other counties, and may be used in evidence, as in the case of certified copies of written wills in the custody of the court.

■ The evidence supports the validity of the original will and the accuracy of the photocopy of Ruby's will. Spain identified the copy of her mother's signature. The trial court heard testimony and considered circumstantial evidence that Spain had the will in her possession.[6] She acknowledged her mother and Luther, Sr. executed wills together. Luther, Sr.'s will, executed on the same date as Ruby's will, appears in the same format as the copy of Ruby's will produced in court. Both wills essentially make specific bequests and then leave the remainder to the spouse, unless that spouse dies first, and then assets are devised to the children and stepchildren. One of the subscribing witnesses and the notary public identified the copies of signatures on both wills, and explained why the copy appeared to be an accurate photocopy. The circumstances, including Spain's actions after telling Luther, Jr. she had her mother's will, indicate the copy offered at trial was the same as the original will. The probate court found the 1983 will had not been revoked. See Tex. Prob.Code § 88(b). Spain does not specifically challenge this finding on appeal. If the original will was last known to be in the testator's possession, failure to produce the original after the testator's death would raise a presumption the testator destroyed the will with the intent of revoking it. *Hibbler v. Knight* 735 S.W.2d 924, 927(Tex. App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Berry v. Griffin*, 531 S.W.2d 394, 395(Tex. Civ.App.-Houston [14th Dist.] 1975, writ ref'd n.r.e.). If a presumption of revocation is established, the proponent of the will carries the burden of proving that the testator did not destroy the will with the intent to revoke it. *See O'Brien v. Stanzel*, 603 S.W.2d 826, 827 (Tex.1980). Proof of circumstances

contrary to the presumption or evidence that some other person fraudulently destroyed the will may overcome the presumption of revocation; the presumption must be overcome by a preponderance of the evidence. *See In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex.1988); *In re Estate of Caples*, 683 S.W.2d 741, 743(Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.). Under the circumstances in this case, the probate court could reasonably conclude Spain had possession of the original will after her mother's death. *See, e.g., McNamara v. Hall*, 678 S.W.2d 578, 580 (Tex.App.-Houston [14th Dist.] 1984, no writ) (granting application for probate of a photocopy of will where the "logical and reasonable conclusion" was that original was in opposing party's possession.). Sufficient evidence supports the finding that Ruby did not revoke the 1983 will. *See* Tex. Prob.Code § 88(b).

### The Exact Photocopy and Section 85

■ A reviewing court must uphold a correct trial court judgment on any legal theory properly before the trial court. *See Guar. County Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex.1986) ("We must uphold a correct lower court judgment on any legal theory before it, even if the court gives an incorrect reason for its judgment."). Luther, Jr.'s Amended Application for Probate of Will did not request probate of the will solely or specifically under section 85; Luther, Jr.'s application sought probate of the copy of the will. On appeal, he requests this Court "affirm the order of the Trial Court admitting to probate the exact photocopy of the 1983 will of Ruby Jones."

---

**6.** The law generally does not allow someone in possession of an original document to complain about its non-production. *See generally Hughey v. Donovan*, 135 S.W.2d 265,

266(Tex.Civ.App.-Galveston 1939, no writ); see also Tex.R. Evid. 1004(d) (original in possession of opponent).

When a written will is produced in court, section 85 does not apply; the section applies only when a written will cannot be produced. *See* Tex. Prob.Code Ann. § 85. Courts sometimes apply section 85 when an applicant attempts to admit a copy of a will to probate rather than an original. *See, e.g., Brown v. Traylor,* —— S.W.3d ——, No. 01–04–01091–CV, 2006 WL 1098265, 2006 Tex.App. LEXIS 3400(Tex. App.-Houston [1st Dist.] Apr. 27, 2006, no pet.); *Garton v. Rockett,* 190 S.W.3d 139 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *see Coulson,* 700 S.W.2d 336(applied section 85 where unsigned copy of the will was offered for probate and court affirmed trial court's order denying probate because there was no evidence the alleged lost will was duly executed); *Howard Hughes Med. Inst. v. Neff,* 640 S.W.2d 942(Tex. App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.) (applied section 85 where an unexecuted photocopy of a will was offered for probate and court affirmed trial court's order denying probate); *Fuller v. Sechelski,* 573 S.W.2d 587(Tex. Civ.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.). Some courts nevertheless have held under other circumstances a copy may serve the function of an original will. *See In re Capps,* 154 S.W.3d 242 (photocopy of holographic will); *see generally Combs v. Howard,* 131 S.W.2d 206 (Tex.Civ.App.-Fort Worth 1939, no writ) (executed carbon copy); *see also Bracewell v. Bracewell,* 20 S.W.3d 14 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (holding photocopy of joint will was properly admitted for probate); *Miller v. Miller,* 285 S.W.2d 373 (Tex.Civ. App.-Eastland 1955, no writ). *In Garton v. Rockett,* however, the court said, "A party seeking to probate a copy of a will, rather than the original, must proceed under section 85 of the Probate Code, which provides the requirements for proving a 'written will not produced in court.'" *Id.* at 190 S.W.3d at 145.

The issue before the *Garton* court was the one argued here, whether the requirement of proof from a witness who had read the will or heard it read had been met. *See id.* The court held it had not. *Id.* at 147. The court distinguished *Capps* because, among other reasons, "the court in *Capps* did not directly address the requirement in section 85 that the contents of a written will not produced in court 'must be substantially proved by the testimony of a credible witness who has read it or heard it read.'" *Garton,* 190 S.W.3d at 146. The court distinguished Bracewell on the same ground, and for the additional reason that Bracewell involved a copy of a joint will supported by the testimony of "the surviving testator." *Garton,* 190 S.W.3d at 146–47. Finally, the Garton court explained that although Miller held "that a copy of a will raised a fact issue regarding the contents of an alleged 'lost will,' there was testimony from multiple witnesses who had seen the original lost will and these witnesses testified that the copies offered for probate were exact copies of the original or were, 'in substance,' the same as the original." Garton, 190 S.W.3d at 147. In holding that there was no evidence to support the jury's finding that the contents of the will were substantially proved by the testimony of a credible witness who read the will or heard it read, the *Garton* court concluded as follows:

> In this case, there was no testimony proving the contents of the 'written will not produced in court' by someone who had read it or heard it read, and there was no testimony establishing that the copy was an accurate copy of the 'written will not produced in court'. . . . [w]e cannot disregard the plain language in section 85, which requires the contents of a 'written will not produced in court' to be proved by the testimony of a credi-

ble witness 'who has read it or heard it read.'

*Id.* (citing Tex. Prob.Code Ann. § 85).

When a written will cannot be produced in court, and the required proof is provided, a probate court may determine the contents of a written will from the testimony of a witness who has read the will or heard the will read. *See* Tex. Prob.Code Ann. § 85. The court then sets forth the contents of the written will in a written order. *See* Tex. Prob.Code Ann. § 91. In those circumstances, the court is essentially relying on what the witness recalls of the will's contents. The procedures under sections 85 and 91 presume the court is not presented with a written will to probate.

We do not see the "read it or heard it read" requirement in section 85 as intending to determine the accuracy of a photocopy of a written will, though under other circumstances that type of testimony may be necessary to determine the accuracy of a photocopy apart from any requirement of section 85. The purpose of section 85, as we see it, is to establish the contents of a written will not in the custody of the court and that can only be reproduced by a written order of the probate court based on testimony describing the will's contents. *See* Tex. Prob.Code Ann. §§ 85, 91. The testimony to support the order must come from a credible witness who has read the written will or heard it read. If a writing is an accurate reproduction of the valid unrevoked written will of the testator, the probate court need not rely on or require the testimony of a credible witness who testifies from memory regarding the provisions of the testator's will, because the written terms of the will are before the court.

▮ We believe construing section 85 as being inapplicable when an exact photocopy of a valid, unrevoked will is produced in court follows the statute's plain language. The Code Construction Act defines "written" as including "any representation of words, letters, symbols, or figures." Tex. Gov't Code Ann. § 311.005(11) (Vernon 2005). "A will is generally defined as an instrument by which a person makes a disposition of his property, to take effect after his death, and which by its own nature is ambulatory and revocable during his lifetime." *In re Estate of Brown,* 507 S.W.2d 801, 803(Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.). Spain does not argue the 1983 will was revoked. The exact photocopy of the valid 1983 will was Ruby's written will.

### Conclusion

The evidence sufficiently supports the probate court's findings that Ruby's 1983 will was valid and met the requirements for a written will under the Probate Code, the will was not revoked, and the photocopy was an exact reproduction of the original will. A written will was produced in court for probate. Because a written will was produced in court, section 85 does not apply. *See* Tex. Prob.Code Ann. §§ 85, 91. The order admitting Ruby Jones's written will to probate is affirmed.

AFFIRMED.