

NUMBER 13-20-00289-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

ESTATE OF RICKEY RAY ALLEN, DECEASED

On appeal from the County Court at Law
of Hill County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina
Memorandum Opinion by Chief Justice Contreras**

This cause concerns a dispute over the estate of Rickey Ray Allen. Appellant Lisa Allen, Rickey's surviving spouse, appeals a judgment in favor of appellees Kenneth Lindsay and Corey Allen.[1] By three issues, Lisa argues the trial court erred when it (1) admitted an unsigned copy of Rickey's will; (2) found sufficient grounds existed to explain why Rickey's will was not produced; and (3) found that Rickey did not revoke his will. We

---

[1] We will refer to the individuals with the last name "Allen" by their first name to avoid confusion. Lindsay is the brother of Rickey's first wife, Ruth Allen, and Corey is Rickey's son.

affirm.

## I. BACKGROUND[2]

When Rickey was eighteen years old, he married his first wife Ruth Allen, and the couple had two children: Corey and Beckey. Ruth died in 1999, and a will she executed in 1982 was probated. In 2004, Rickey married Lisa. In July 2019, Rickey died. On February 14, 2020, Lindsay and Corey filed the live pleading before the trial court seeking: (1) to probate a copy of Rickey's alleged will executed in 1982; (2) the issuance of letters testamentary appointing Lindsay as independent executor of Rickey's estate; and (3) the revocation of the letters of dependent administration previously granted to Lisa.[3]

In their live pleading, Lindsay and Corey alleged that Rickey left a valid will that he never revoked; they attached an unsigned copy of the alleged will asserting it was a true copy. *See* TEX. EST. CODE ANN. § 256.156 (providing the requirements for probating a will that cannot be produced in court). According to them, "[t]he original of the executed [w]ill cannot be located and it is the opinion of [Lindsay] and Corey that the executed original of the [w]ill was destroyed by unknown persons either while [Rickey] was in his last illness or after his death." Lisa opposed their requests, and the case proceeded to be tried before the bench.

On February 26, 2020, the trial court entered an order in favor of Lindsay and Corey, granted Lindsay letters testamentary, and issued findings of fact and conclusions

---

[2] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] The 1982 will named Ruth as the executor, then Sue Woodard as the successor executor, and then Lindsay as the second successor executor. Ruth and Woodard are deceased, and Beckey disclaimed any interest she had in Rickey's estate and is not a party to the proceedings.

of law. The trial court found that Rickey's 1982 will had been executed with the formalities required by law to make it a valid will and that "it was self-proved in accordance with the Texas Estates Code." The trial court further found that: (1) the unsigned copy proffered by Lindsay and Corey was a true and correct copy of the original 1982 will; (2) Rickey never revoked the will; (3) Rickey continued to maintain trust, love, and devotion to the beneficiaries of the will; (4) Lindsay and Corey exerted reasonable diligence searching for the original will; (5) Lindsay and Corey overcame the presumption of revocation of the will; (6) the contents of the will had been substantially proved by the testimony of credible witnesses; and (7) the cause for nonproduction of the original will had been sufficiently proven. This appeal followed.

Lisa then filed a motion with this Court, asking us to remand to the trial court to enter additional findings of fact concerning the cause of nonproduction of Rickey's will and the trial court's conclusion that Rickey never revoked the will. We granted her request, and the trial court issued further findings. We reinstated the appeal on October 10, 2020.

## II.    EVIDENTIARY RULING

By her first issue, Lisa argues the trial court erred when it admitted the copy of Rickey's alleged 1982 will into evidence. Specifically, Lisa argues that (1) Lindsay and Corey "failed to establish the contents of [Rickey's] will"; (2) the unsigned copy was not a "duplicate" because it was not signed by Rickey and "no party could testify that it accurately recorded the terms of [Rickey's] alleged [w]ill"; and (3) the unsigned draft is inadmissible because Chuck Lummus, the attorney who drafted the 1982 will, "was not the custodian of the records" for the unsigned draft.

3

**A.      Standard of Review & Applicable Law**

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 426 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). A trial court abuses its discretion when it rules without regard to guiding rules or principles. *Id.* "Except as provided by § 51.203 [dealing with service of notice to take depositions in certain matters], the Texas Rules of Evidence apply in a proceeding arising under [the estates code] to the extent practicable." TEX. EST. CODE ANN. § 54.051; *In re Estate of Jones*, 197 S.W.3d 894, 898 n.3 (Tex. App.—Beaumont 2006, pet. denied).

Relevant evidence is generally admissible. *See* TEX. R. EVID. 402. "To authenticate or identify an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. *Id.* R. 901(a). This may be done with the testimony of a witness with knowledge and by the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Id.* R. 901(b)(1), (b)(4). A duplicate is admissible to the same extent as the original unless a question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." *Id.* R. 1003. Generally, when a trial court admits a duplicate of an original document into evidence, the court implicitly rules that there is no genuine issue concerning the authenticity of the original, that the copy is an accurate reproduction of the original, and that it is not unfair under the circumstances to admit the copy into evidence. *See id.* R. 1001, 1003, 1008; *In re Estate of Jones*, 197 S.W.3d at 898 n.3.

**B.     Analysis**

In essence, Lisa's arguments challenge the authenticity of the unsigned copy. Here, Lummus testified he is a retired attorney, that he drafted "mirror image" wills for both Ruth and Rickey in 1982, and that Rickey's will was an identical mirror-image of Ruth's will. He explained that he and his legal secretary, Linda Hight, witnessed the execution of both wills. *See* TEX. EST. CODE ANN. § 251.051 (providing that a last will and testament must be in writing, signed by the testator, and attested by two or more credible witnesses). Lummus testified that Rickey, Ruth, Hight, and he were all over eighteen years old and that Rickey was of sound mind and declared the document as his last will and testament. The wills he drafted provided that Rickey and Ruth "left everything to each other and then equally to the two kids, Corey and Beckey." Lummus testified the will probated when Ruth passed away was the one he drafted.

Lummus also explained that he did not keep signed copies of his clients' wills in 1982, that his clients' files were in storage with his old law firm, and that he has access to them but not custody of them because they were stored away in a warehouse. He stated he called the law firm's bookkeeper, Catherine Fuchs, and asked her to go to the warehouse and find the file. According to Lummus, Fuchs gave the copy to Corey and Corey then showed that copy to Lummus. Lummus also reviewed the file retrieved from storage, which contained his handwritten notes as well an unsigned copy of Ruth's will and a copy of her probated will, and he testified the unsigned copy offered by Lindsay and Corey was a correct copy of the will Rickey executed in 1982.

Finally, Lindsay and Corey offered into evidence a copy of Ruth's probated will as

well as the unsigned copies of Rickey's and Ruth's wills that were retrieved from the warehouse. Ruth's probated will and the unsigned copy of Rickey's alleged will are substantively identical, the same number of pages, in the same typing format and font, and reference each other. For example, Ruth's will references Rickey's will by stating "Rickey R. Allen has this day executed his Last Will and Testament, but we have agreed that the Wills are not contractual, and that either he or I may revoke our respective Will . . . ."

Based on this record, we cannot conclude that the trial court abused its discretion when it admitted the unsigned copy of Rickey's will into evidence. *See id.* R. 901(a), (b)(1), (b)(4), 1003; *In re Estate of Jones*, 197 S.W.3d at 898 n.3, 901; *see also Jurgens v. Martin*, No. 11-18-00316-CV, __ S.W.3d __, __, 2021 WL 1033306, at *18 (Tex. App.—Eastland Mar. 18, 2021, pet. filed) ("In light of Costin's description of the exhibit, coupled with what its contents revealed, the trial court did not abuse its discretion by determining that the exhibits were what Martin asserted they were."); *Henderson v. Barrett*, 376 S.W.2d 432, 433 (Tex. App.—Waco 1964, writ ref'd n.r.e.) ("The photostat of the attorney's carbon file copy of the absent will, along with his testimony, was admissible as the best available evidence of the absent and missing will."); *Miller v. Miller*, 285 S.W.2d 373, 374 (Tex. App.—Eastland 1955, no writ) (concluding trial court erred in refusing to admit into evidence a carbon copy of decedent's lost will when proponent offered testimony from the drafting attorney and other witnesses that supported a finding that carbon copies were authentic duplicates of the decedent's will).

Lisa's first issue is overruled.

### III. SUFFICIENCY OF THE EVIDENCE

By her second and third issues, Lisa challenges the legal and factual sufficiency of the evidence underlying the trial court's findings that (1) Lindsay and Corey sufficiently proved the cause of the nonproduction of the will, and (2) Rickey did not revoke the 1982 will.

### A. Standard of Review

We review the legal and factual sufficiency of the evidence supporting the trial court's findings of fact just as we would to review a jury's findings in a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *In re Estate of Standefer*, 530 S.W.3d 160, 163 (Tex. App.—Eastland 2015, no pet.). When the trial court sits as the factfinder, it is the sole judge of the witnesses' credibility, and it may believe one witness over another. *In re Estate of Standefer*, 530 S.W.3d at 164.

In a legal sufficiency review, we review the evidence in the light most favorable to the finding, indulging every reasonable inference in favor of the finding and disregarding all evidence and inferences contrary to it. *Brandford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *see In re Estate of Standefer*, 530 S.W.3d at 164; *In re Estate of Rhea*, 257 S.W.3d 787, 790 (Tex. App.—Fort Worth 2008, no pet.). If there is more than a scintilla of evidence in support of the challenged finding, then the evidence is legally sufficient. *See In re Estate of Standefer*, 530 S.W.3d at 164.

In a factual sufficiency review, we examine all the evidence in the record, both for and against the challenged finding. *Id.* We consider and weigh all the evidence in a neutral light. *Id.* If the evidence would enable reasonable and fair-minded people to differ in their

conclusions, then the evidence is factually sufficient. *Id.* We will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

## B.    Cause for Nonproduction of the Will

By her second issue, Lisa argues the trial court erred when it found that "sufficient grounds exist to explain why [Rickey's] will was not produced."

To probate Rickey's 1982 will when it could not be produced in court, Lindsay and Corey needed to prove the cause of the nonproduction of the will, to the extent "sufficient to satisfy the court that the will cannot by any reasonable diligence be produced."[4] *See* TEX. EST. CODE ANN. § 256.156(b)(1). The trial court found that "the original of the 1982 will could not be located following the death of Rickey," "that a thorough search was undertaken for the original [w]ill without success," and that "the cause of nonproduction of the original 1982 will in Court by any reasonable diligence was proved by the testimony of family members and also by several witnesses close to" Rickey.

Here, Corey testified that, shortly after Rickey's death, Lisa asked him to get two trunks[5] out of Rickey's and Lisa's house. Corey explained the trunks "kept all my mother's childhood things and stuff from my mom and dad." When he got home, in one of the

---

[4] A party seeking to probate a copy of a will must prove the will "in the same manner as provided" for an attested written will or holographic will. TEX. EST. CODE ANN. § 256.156(a) ("The same amount and character of testimony is required to prove the will not produced in court as is required to prove a will produced in court."); *Woods v. Kenner*, 501 S.W.3d 185, 197 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Furthermore, "the contents of the will must be substantially proved by the testimony of a credible witness who has read either the original or a copy of the will, has heard the will read, or can identify a copy of the will." TEX. EST. CODE ANN. § 256.156(b)(2). Lisa does not challenge the sufficiency of the evidence as to these requirements.

[5] The trial court found that Rickey had a "practice" of "retaining his documents relating to his personal assets and estate in a trunk at his residence . . . ." Lisa does not challenge this finding on appeal.

trunks, Corey found "a manila folder that had [Ruth's] probate in it" and "another manila folder that had land transactions from" Ruth and Rickey, but he did not find Rickey's will. Corey also found multiple personal items in the trunk that belonged to Lisa, including pictures of her kids "long before" she married Rickey. Corey stated his father would not have placed Lisa's items in the trunk. Corey also testified he searched "the Boar's box"— a storage area located "off the back of one of them one-and-a-half-ton trucks"—that contained boxes of documents. Corey explained he called Johnson County and Bosque County to see if the will had been filed there, and Lummus testified that his law office's files were also searched. Don Brown testified he had been Rickey's friend and business partner since 1977. He explained he and Corey also searched Brown's office for Rickey's 1982 will.

Lisa testified that she looked through the house but did not find a will and that Rickey did not keep any important papers at home. She stated she never accessed the trunks. Lisa accused Corey of getting the pictures of her kids out of the Boar's box and testified there was "no way" any of her items were in the trunks when Rickey died. Loretta Maxwell, a friend of Rickey and Lisa, testified she saw the pictures of Lisa's kids in the Boar's box the day Corey searched through it.

We note that the trial court was free to disbelieve Lisa and believe Corey as to whether Lisa's pictures were in the trunk that contained Ruth's will and other documents.[6] *See In re Estate of Standefer*, 530 S.W.3d at 164. In any event, Lindsay and Corey were not required to establish the manner in which the will was lost. *See In re Estate of Catlin*,

---

[6] The trial court's findings of fact noted that "despite denials by Lisa there was evidence she had entered the trunk."

311 S.W.3d 697, 700–01 (Tex. App.—Amarillo 2010, pet. denied) ("It was not necessary for Barnes to also show how [the will] was lost such as through the eating habits of a neighbor's goat, the occurrence of a Kansas tornado, the devastation of a flash flood, or the like."). Viewing the evidence in the light most favorable to the trial court's finding, we conclude there was evidence supporting an inference that Rickey's will was not produced because it could not be found with the use of reasonable diligence. *See* TEX. EST. CODE ANN. § 256.156(b)(1); *In re Estate of Caples*, 683 S.W.2d 741, 742–43 (Tex. App.—Corpus Christi–Edinburg 1984, writ ref'd n.r.e.) (concluding that husband's access to the decedent's important papers coupled with the fact that husband was to receive "only three hundred dollars a month under the will" were sufficient to raise a fact question for disposition by the jury as to whether decedent's original will was lost or destroyed by husband). The evidence is legally sufficient.

Additionally, viewing all the evidence in a neutral light, we conclude reasonable and fair-minded people could reach the trial court's finding. *See In re Estate of Standefer*, 530 S.W.3d at 164. Therefore, there was legally and factually sufficient evidence supporting the trial court's finding Rickey's will could not be produced by any reasonable diligence. *See* TEX. EST. CODE ANN. § 256.156(b)(1); *In re Catlin*, 311 S.W.3d at 700–01 (concluding that search of decedent's house, business, and the banks with which he maintained a relationship was sufficient evidence as to the cause of nonproduction sufficient to satisfy the trial court that the original will cannot be produced); *In re Capps*, 154 S.W.3d 242, 244–45 (Tex. App.—Texarkana 2005, no pet.) (concluding there was sufficient evidence of cause of nonproduction when the original will was not found despite

10

a diligent search, which included "a thorough search of the house" and of "the metal box that typically contained [decedent's] important records").

Lisa's second issue is overruled.

## C.    Rickey Did Not Revoke the 1982 Will

By her third issue, Lisa challenges the legal and factual sufficiency of the evidence underlying the trial court's finding that Rickey did not revoke his will.

When an original will is lost but was last seen in the testator's possession, a rebuttable presumption arises that the testator destroyed the will with the intention of revoking it. *McElroy v. Phink*, 76 S.W. 753, 753 (Tex. 1903); *In re Estate of Standefer*, 530 S.W.3d at 164. The proponent can overcome the presumption with evidence that someone else fraudulently destroyed the will or other evidence contrary to the presumption. *Brown v. Traylor*, 210 S.W.3d 648, 662 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see Woods v. Kenner*, 501 S.W.3d 185, 197 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("Evidence that the decedent recognized his will's continued validity and had continued affection for the primary beneficiary of his will, without evidence that he was dissatisfied with the will or had any desire to change or cancel it, is sufficient proof of circumstances contrary to the presumption."); *In re Estate of Capps*, 154 S.W.3d at 245.

The proponent of the copy of the lost will must overcome this presumption by the preponderance of the evidence.[7] *In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex. 1988)

---

[7] Lisa argues that the standard for overcoming the presumption is "clear and direct" evidence. While some appellate courts in the past reviewed the evidence overcoming this presumption under a clear and convincing standard of review, *see, e.g.*, *Barry v. Griffin*, 531 S.W.2d 394, 396–97 (Tex. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Mingo v. Mingo*, 507 S.W.2d 310, 311 (Tex. App.—San Antonio 1974,

(per curiam). Preponderance of the evidence means the greater weight and degree of credible evidence that would create a reasonable belief in the truth of the matter. *See Murff v. Pass*, 249 S.W.3d 407, 409 n.1 (Tex. 2008) (per curiam); *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 706 n.8 (Tex. App.—Amarillo 2018, pet. denied).

The trial court's findings of fact provide that: Rickey never revoked the 1982 will; he maintained "trust, love[,] and devotion" for the beneficiaries of the will; he continued to grant, until the time of his death, authority and estate assets consistent with the bequests to the beneficiaries of the will; and he "continued to recognize the 1982 [w]ill as valid up until the time of his death . . . ."

Here, there was evidence from multiple witnesses that Rickey recognized the continued validity of his 1982 will through the years up until his death. Lummus testified that he had conversations with Rickey about updating his will but that, to his knowledge, he did not and he had "no reason" to believe Rickey revoked the 1982 will. Patty Allen, Corey's wife, testified she was very close to Rickey and worked for the family business. According to Patty, in 2017, Rickey gave Corey powers of attorney over his business and medical care and told her he needed "to make changes to a will that he had done previously with Ruth." Patty explained Rickey again told her of the changes he wanted to make to his will on May 10, 2019, while he was hospitalized. Rickey asked Patty to take notes and type them up, and then Rickey "would take it and have it finalized and signed from there." Due to his deteriorating health, the changes were never executed. Patty

---

writ ref'd n.r.e.), the Texas Supreme Court has since made it clear that the standard of proof is a preponderance of the evidence. *See In re Estate of Glover*, 744 S.W.2d 939, 940 (Tex. 1988) (per curiam) (disapproving of cases holding that the standard of review was clear and convincing evidence).

stated that on May 15, 2019, when Rickey was being admitted to another hospital, he stated to her and Beckey that "I still have my will that your mom and I did together." Michael Franklin, one of Rickey's close friends, testified that he encouraged Rickey to update his will throughout the years but that, as far as he knew, Rickey did not do so. According to Franklin, Rickey never said anything to him about revoking the 1982 will and explained that Rickey "would never do anything like that." Brown stated that Rickey told him, "when we were doing Ruth's probate[,] that he had a sweetheart will that he had done."[8] Brown and Rickey also discussed the 1982 will "over the years," "from back when we were together back from about 2011 . . . And then discussed it again in 2017, and then discussed it again in May of 2018 or in that neighborhood."

There is also evidence that Rickey continued to have affection for the primary beneficiaries of his 1982 will: Corey and Beckey. According to Patty and Lummus, Rickey and Corey were very close up until Rickey's death, and Corey had taken a large role in running Rickey's businesses. Rickey granted Corey powers of attorney over his business and medical care, and the notes Rickey dictated to Patty while hospitalized provided that Corey was the primary beneficiary of his estate with Lisa receiving only a life estate in the house she shared with Rickey, conditioned on Lisa remaining single. According to Franklin, Rickey wanted all of his estate "to go to Corey; then Corey was going to take care of his sister Beckey and then he was going to take care of whoever else they had already decided to take care of." Franklin explained Rickey made this wish clear to him on "[m]any, many, many occasions, years' worth." Brown explained Rickey told him he

---

[8] Brown explained that "[a] sweetheart will basically means that . . . if he died, he left everything to her, and if she died, she left everything to him."

13

wanted to update his will to have Corey be the executor and for Corey to take care of Beckey.[9]

Finally, we note that there is evidence that Rickey thought about changing his will; that he consulted with two attorneys; and that one of the new attorneys, Elisa Rainey, drafted a new will for Rickey in 2017. However, Franklin testified that Rickey "was just really freaking pissed off and he wasn't very happy" with the will drafted by Rainey. According to Franklin and Brown, Rickey "ripped up" the will prepared by Rainey and never executed it. Rainey testified that her notes from her meeting with Rickey provided:

> I show that he had a $100,000 life insurance policy, which already had Lisa named as a beneficiary; the concrete business and the real estate and equipment affiliated with the business was to go to Corey for his lifetime and upon Corey's passing to [his step-son] Justin Noland and [step-grandson] Keaden Lock 50-50, equally between the two of them; $50,000 each to Keaden Lock and Kylie Lock[10] in trust until they reach 25; $100,000 to [granddaughter] Shani in trust until age 25; $100,000 to Corey outright free of trust; all household furnishings and personal effects used exclusively by Beckey and Shani to go to Beckey; all other household furnishings and personal effects to go to Lisa; everything else to go in trust for Lisa and Beckey.

Rainey explained that, when Rickey came in to execute the new will, he "was overwhelmed and angry to some extent about the volume of documents, and left that day with the draft documents to review . . . ." Rainey stated Rickey "never came in and actually signed."

Lisa testified she was aware that Rickey executed a will in 1982, but she had never seen that document and she never heard Rickey talk about that document. According to

---

[9] Beckey suffers from serious health issues and the evidence shows that Rickey wanted to make sure that Corey could take care of Beckey after his death.

[10] Kiley's relation to Rickey is unclear from the record.

Lisa, "Rickey [came] in and handed [the documents prepared by Rainey] and told me to put them up, that I was going to need them one day." Lisa explained that when Rickey was hospitalized "and Corey said that he found his power of attorney," she "went home and I looked and I had a [signed] power of attorney in there, too . . . ."[11] Lisa did not know that Rickey had met with Rainey, and Rickey did not have any discussions with her "about what [Rickey] should do in terms of a will . . . ." Lisa said Rickey never discussed his intentions with her for his estate after he died, but that "he just always told me that I would be well taken care of." Lisa submitted into evidence unexecuted copies of the documents prepared by Rainey.

As noted above, the trial court was free to disbelieve Lisa and believe Corey and the other witnesses' testimony supporting an inference that Rickey did not revoke his 1982 will. *See In re Estate of Standefer*, 530 S.W.3d at 164. Viewing the evidence in the light most favorable to the trial court's finding, we conclude there was evidence supporting an inference that Rickey did not revoke his 1982 will. *See id.* Additionally, viewing all the evidence in a neutral light, we conclude reasonable and fair-minded people could conclude that Rickey did not revoke his 1982 will. *See id.* Therefore, we conclude the evidence was legally and factually sufficient to support the trial court's finding. *See In re Catlin*, 311 S.W.3d at 700–01 (noting that the decedent informed stepdaughter that "he wanted to make some changes to [his will] and was acquiring information to do so[, but] those changes were not made before his death" and concluding there was factually and

---

[11] The medical power of attorney submitted by Lisa was executed by Rickey on February 27, 2017, in the law office of Anthony Silas. The medical power of attorney names Corey as Rickey's agent and Lisa as an alternate agent.

legally sufficient evidence that testator did not revoke will); *In re Estate of Capps*, 154 S.W.3d at 245–46 (noting that decedent told others of her intention to leave her property essentially as set out in the will, that she continued to have affections for devisees named in the will, and that she did not express or intimate any contrary intention regarding the disposition of the property and concluding evidence was sufficient that will was not revoked).

Lisa's third issue is overruled.

## IV. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
20th day of May, 2021.